STATE OF NEBRASKA V. STEPHEN W. TANNER.

FILED JANUARY 18, 1905. No. 13,706.

1. **Indemnity School Lands: CONGRESSIONAL GRANT.** The act of congress approved March 3, 1893, 27 U. S. Statutes at Large, ch. 200, p. 555, grants to the state such portions of the lands embraced within the abandoned military reservation therein named, out of the odd-numbered sections, when surveyed, as indemnity school lands as shall be selected within one year after the survey and the filing of the plats thereof, and accepted in full satisfaction of the state's claim for a like number of acres lost in sections 16 and 36, which were set apart for the use and benefit of the common schools at the time of the admission of the state into the Union.

1a. ———: ———. The grant became absolute and the state became possessed of the fee simple title upon its acceptance of the terms

of the grant and its selection, within the time limited, of the lands granted for the purpose named, as therein provided.

1b. ———: Settlers. The proviso found in the act to the effect that no existing lawful rights arising under the public land laws shall ⸺e prejudiced by the act cannot inure to the benefit of one who settles on and improves the land at or about the time of the passage of the act, and before the survey of the land as therein contemplated, and before the expiration of the time in which the state might make its selection, as therein provided. A person settling upon such land under such circumstances is technically a trespasser, and can acquire no valid preference right thereby as against the state's right to select lands as indemnity school lands, as in said act provided.

1c. ———: ———. The act of congress of July 5, 1884, 23 U. S. Statutes at Large, ch. 214, p. 103, recognized only the right of an individual settler who was in actual occupation of a portion of a military reservation prior to the location of the reservation or prior to January 1, 1884, in good faith, for the purpose of securing a home.

1d. ———: ———. The rights acquired by settlement, and recognized by the act of July 5, 1884, as above mentioned, or those of like character are the "lawful rights" which it is declared shall not be prejudiced in the act of March 3, 1893, granting lands to the state as indemnity school lands in lieu of other lands theretofore lost.

1e. ———: ———. The act of congress of August 23, 1894, 28 U. S. Statutes at Large, ch. 314, p. 491, giving the perference right of entry to a *bona fide* settler on lands embraced within an abandoned military reservation, in no way impairs the right of the state to select indemnity school lands within the time and manner as contemplated by the grant for that purpose contained in the act of March 5, 1893.

2. Pleadings. An allegation in an answer which pleads only a conclusion and not an issuable fact states no defense and is vulnerable to a demurrer.

3. School Lands: Selection: Constitutional Law. The constitutional provisions relating to the control and management of educational lands and funds, and the creation of commissioners for that purpose, are not applicable to the means employed whereby title to lands is acquired by the state for the benefit of the public schools, but only to the control and management thereof after the title has become vested in the state.

3a. ———: ———: ———. The state may by its legislature accept the terms of an act of congress granting to it lands as indemnity

school lands, and authorize the commissioner of public lands and buildings to select the lands thus granted, without violating any of the provisions of the fundamental law.

4. ——: TITLE. The legislature having accepted the terms of the grant of indemnity school lands, as provided by the act of congress of March 3, 1893, and authorized the selection of the lands granted by the commissioner of public lands and buildings, and the selections having been made within the time limited and approved by the interior department, and set apart and noted upon its records as indemnity school lands selected by the state of Nebraska, the state thereby became vested with a perfect and absolute title to all of such lands.

4a. ——: POWER OF LEGISLATURE. It is not competent for the legislature to provide for the disposition of school lands to which the state has acquired a perfect and absolute title, otherwise than as authorized and directed by the constitution.

4b. Statute: CONSTITUTIONAL LAW. The act of the legislature passed in 1901, ch. 115, laws, 1901, entitled "An act for the relief of" the parties therein named, contravenes the provisions of sections 1 and 8, article VIII of the constitution, and is therefore inoperative and wholly void.

ORIGINAL action in the nature of ejectment. *Judgment for the state.*

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

*Sanford Parker, W. T. Wills* and *M. F. Harrington, contra.*

HOLCOMB, C. J.

This is an action begun in this court in the exercise of its original jurisdiction. The petition is in the usual form in an action of ejectment. The answer consists, first, of a general denial; and second, of allegations of fact touching the source of title and ownership of the state and of the defendant respectively of and to the land in controversy, with a prayer that title thereto be quieted in the defendant and that the state be adjudged to have no right to maintain its action. A general demurrer is in-

terposed to the second defense, and the cause is thus submitted on the pleadings. The issues arising under the allegations of the answer and the demurrer thereto are not as clearly and well defined as it seems to us they might be made, and such as would conduce to a more intelligent disposition of the controversy; but, since the cause is thus submitted, we endeavor to determine the legal questions arising from the record as it is presented to us. It will not be necessary to set forth in detail the allegations contained in the answer. The facts pleaded therein will sufficiently appear in the discussion to follow. Suffice to say that the state claims the title and ownership of the land in controversy under an act of congress granting such land with other lands as indemnity lands for school lands lost to the state, and to which it is entitled under the provisions of the enabling act admitting the state into the Union. The defendant contends, and so alleged in his answer, that, by virtue of his settlement on the land and the improvement thereof, with a view of acquiring title thereto under the homestead laws, prior to the time the state had made its selection of such land as school indemnity land, he acquired a preference right to the land and is in fact the equitable owner, and that the title acquired by the state is subject to such preferential right and interest so secured by the prior settlement. The answer alleges in substance that the land in controversy is a part of an abandoned military reservation known as the Fort Randall Military Reservation; that he settled on the land March 20, 1893, and has ever since resided upon and made valuable improvements thereon, and that he settled thereon with the intention of making entry and acquiring title thereto from the United States under the homestead laws; that he has resided thereon and improved the same for more than five years, and is the equitable owner of said premises and possessed of all interest therein except the naked legal title. After referring to different acts of congress, and a concurrent resolution of the legislature of the state authorizing the

commissioner of public lands and buildings to select as agent of the state, pursuant to the provisions of an act of congress, indemnity lands for school lands lost to the state, it is in the answer further alleged in substance that, in pursuance of such legislative authority, the commissioner of public lands and buildings proceeded to said Fort Randall Military Reservation and selected certain lands as indemnity school lands, and that among the lands so selected was the tract in controversy, upon which the defendant was at the time a settler; and that the commissioner thereafter reported the said lands to the secretary of the interior—that he had selected the same in behalf of the state of Nebraska as indemnity school lands, and that it was recorded upon the books of the department of the interior as indemnity school lands selected by the state of Nebraska.

While some allegations are found in the answer to the effect that the commissioner in selecting the lands he did select made a mistake in that he did not intend to select lands upon which settlers were residing, these allegations, when analyzed, amount to nothing more than that the commissioner was ignorant that the land he selected was occupied by a settler, and would not have made the selection had he been so advised. There is no question of mistake in the description of the lands selected, or that the list as made out included other or different lands than were selected and intended to be selected as school indemnity lands granted by the act of congress, and in pursurance of the concurrent resolution of the legislature accepting the terms of such grant and authorizing the selection of such lands. These allegations found in the answer may therefore be passed without further notice. Other portions of the answer will receive attention as we progress.

1. In arriving at a correct conclusion as to the respective rights of the state and the defendant, we assume that the United States holds the proprietorship of the public lands in this state in the same manner as does an indi-

vidual owner, and that it may dispose of the same by gift or otherwise in such manner and upon such terms as congress may in its wisdom provide for. It is also taken for granted that whatever right the defendant may have acquired by virtue of his alleged settlement on and improvement of the land must have for its basis and upon which it is grounded some act of congress recognizing and protecting the right as in the nature of a validly acquired interest in property. In respect of the title and interest of the state, it may be observed that by section 7 of the enabling act sections 16 and 36 in every township, not otherwise disposed of, were granted to the state for the support of the common schools; and it is therein provided that other lands equivalent to the lands in such sections, otherwise sold or disposed of, shall be granted to the state for the same purpose. The state thus became entitled to all the lands contained in sections 16 and 36 of every township, or their equivalent, when disposed of otherwise, to an equal amount in regular subdivisions of not less than one-quarter section, to be secured from other portions of the public domain lying within the state. After the abandonment of the Fort Randall Military Reservation, and before it was thrown open to settlement, congress, March 3, 1893, passed an act entitled "An act to provide for the survey and transfer of the part of the Fort Randall Military Reservation in the state of Nebraska to said state for school and other purposes." 27 U. S. Statutes at Large, ch. 200, p. 555. The act provides in substance that the odd-numbered sections, after the same shall have been surveyed, may be by the state, at any time within one year after the filing of the official plats of the survey in the local land office, selected as a part of the lands granted to said state as indemnity lands for school lands lost in place, under the provisions of the act to provide for the admission of the state into the Union, provided, that said lands shall be accepted by the state in full satisfaction of lawful claims now existing, or that may hereafter arise, for school land indemnity for a corresponding number of

acres, upon assignment of the basis of the claims by description and selection according to regulations of the interior department. It is provided in the act that no existing lawful rights under any of the land laws of the United States providing for the disposition of the public lands shall be prejudiced by the act. Provisions are also made for the survey and appraisement of the lands included in the reservation, and for opening to settlement under the homestead laws the even-numbered sections and the portions of the odd-numbered sections not selected by the state, as above provided. The legislature of the state at its twenty-fifth session very promptly accepted the terms of the congressional act referred to above, and empowered and authorized the commissioner of public lands and buildings to make the selections as therein provided. Laws, 1897, ch. 122. The lands were thereupon, and in pursuance of the act of congress and the concurrent resolution of the legislature, by the commissioner of public lands and buildings selected within the time limited; the list thereof with the description and all needful information reported to the secretary of the interior, and the lands so selected set apart as belonging to the state for the use and benefit of the common schools.

The act of congress, as we read it, will admit of but one construction. The language is clear and unambiguous. It grants to the state out of the odd-numbered sections, when surveyed, as indemnity lands for school lands lost, such portions thereof as shall be selected within one year, and accepted in full satisfaction of its claim for a like number of acres lost in sections 16 and 36 which were set apart for the benefit of the common schools at the time of the admission of the state into the Union. The grant became absolute, and the state became possessed of the fee simple title, upon its acceptance of the terms of the grant and its selection within the time limited from the odd-numbered sections of the lands granted for the purposes named, when surveyed, as therein provided. The proviso found in the act to the effect that no existing law-

ful rights arising under the public land laws shall be prejudiced by the act cannot inure to the benefit of the defendant. He had acquired no lawful right. · His going upon the land was unauthorized. He was technically a trespasser. The odd-numbered sections were in terms withheld from settlement until after the state had made its selections or until the time limited therefor had expired. They were, or such portions as should be selected and accepted by the state in lieu of other school lands lost to it, as contemplated in the original grant, specially reserved and withheld from settlement or entry under the homestead laws. The state's right to select these lands as indemnity school lands was paramount to any right that might be acquired by settlement within the time which, by the terms of the act, the state was given to make its selection. The question is set at rest by the department of the interior, in so far as its administration of the public land laws can affect the question, by a decision of the secretary of the interior. In the case of *Blair v. State,* 30 L. D. 286, it is held: "A settlement on an odd-numbered section within Fort Randall abandoned military reservation and an application to enter the tract settled upon filed prior to the expiration of the period accorded the state by the act of March 3, 1893, within which to exercise a preferred right of school indemnity selection, cannot defeat the assertion of such right on the part of the state, unless the settler was an actual occupant of said tract prior to the establishment of the reservation or had settled thereon prior to January 1, 1884, in good faith, for the purpose of securing a home and entering the same under the general land laws." It is said in the body of the decision: "At the date of Blair's settlement, and at all times since then to the time of the state's selection, no lawful right could have been initiated upon said land under any public land law of the United States, and hence at the date of the act of March 3, 1893, Blair did not have an existing lawful right. His act of settlement was not authorized by any law, was

a mere trespass, and he took nothing thereby. The debates of congress upon the bill which afterwards became the law above quoted seem to indicate that the 'existing lawful rights' intended to be protected by said proviso were such as it was contemplated might exist by reason of the provisions of an act of July 5, 1884 (23 Statutes at Large, ch. 214, p. 103), entitled 'An act to provide for the disposal of abandoned and useless military reservations,' under which this land would have been disposed of, upon being turned over by the war department, but for the special legislation contained in the act of March 3, 1893." Manifestly the views thus expressed lead to the only rational construction that can be given to the several provisions contained in the act. Any other construction would obviously defeat the main object of the act, that is, the granting of indemnity lands for school lands which the state had lost. The construction contended for would subject the state's rights and interests to those of the individual, who is ever alert and active in an endeavor to acquire from the government title to portions of its public lands whenever or wherever the possibility of so doing arises. These lands are granted to the state for a sacred purpose. They are held in trust for the benefit of the common schools. This trust is by the constitution declared to be inviolable. Congress has by this act expressly made provisions for the state to secure more nearly its full quota of school lands, as originally contemplated. The grant has been accepted and the lands selected, and it would seem that the state cannot escape the responsibility thus thrown upon it, and cannot do otherwise than execute the trust with which it is charged in harmony with the provisions of the fundamental law.

The act of July 5, 1884, 23 Statutes at Large, ch. 214, p. 103, provided only for the transfer of the military reservation to the interior department, and for the survey, appraisement and sale. Nothing is found therein throwing the lands, after survey, open to entry and settlement under the homestead laws. It is provided in the act that any

settler who was in actual occupation of any portion of a military reservation prior to the location of the reservation or prior to January 1, 1884, in good faith, for the purpose of securing a home, and has continued in occupation and is by law entitled to make a homestead entry, shall be entitled to enter the land so occupied not exceeding 160 acres, provided, that such lands were subject to entry under the public land laws at the time of their withdrawal. The defendant of course can claim nothing under this proviso by virtue of his alleged settlement made in 1893. The rights preserved by the act of March 3, 1893, are lawfully acquired rights of the character above described, and not those supposed rights which would arise in favor of one going upon lands of an abandoned military reservation before being thrown open to settlement at the time and under the circumstances the defendant made the settlement, as alleged in his answer herein.

The defendant seems also to place some reliance upon a later act of congress which was passed August 23, 1894, 28 U. S. Statutes at Large, ch. 314, p. 491, as giving him preferential rights and an interest in the land in controversy as against the state under its selection made as aforesaid. The act cited provides in substance that all lands, not already disposed of, included within the limits of any abandoned military reservation placed under the control of the secretary of the interior under the act of July 5, 1884, the disposal of which has not been provided for by a subsequent act of congress, where the area exceeds 5,000 acres, are open to settlement under the public land laws, and a preference right of entry for a period of six months from the date of the act shall be given all *bona fide* settlers who are qualified to enter under the homestead law, have made homes and are residing upon any agricultural lands in said reservations, and, after the passage of the act, for a period of six months from the date of settlement, when that shall occur after the date of the act. This act cannot help the defendant as it is expressly declared that it refers to lands the disposal of

which has not been provided for by other acts of congress. This latter act must be construed in the light of the prior acts on the same subject, and, thus construing them, it seems reasonably clear that the latter act went no further than to give a preference right to settlers on lands subject to settlement and for the disposition of which no other provisions had been made, and that, when so construed, all of the different acts are harmonious and all are given effect, as should be the case in construing statutes *in pari materia*. We are confirmed in our views in this respect from the allegations of the answer to which the demurrer is interposed, which are to the effect that the defendant has a preference right to said lands, and a preference right to enter said lands for a period of six months after the same shall have been thrown open to entry, and that the defendant has made diligent effort to enter said land, but that the same has always been refused. That is, as we construe these allegations, the department of the federal government having the administration of affairs connected with the disposal of the public lands has denied to the plaintiff the right to enter the land in controversy as a homestead, because the same has been disposed of and belongs to the state under the act of congress granting lands to be selected by it in lieu of and as indemnity for school lands theretofore lost, and the acceptance by the state and its selection of such land with other lands under the provisions of the said grant. We cannot escape the conclusion that as between the state and the defendant the state has acquired the title in fee to the land in conroversy, and that the contention of the defendant that he has become the equitable owner thereof by reason of his alleged settlement and residence upon the land and the improvement thereof is not well founded. His settlement upon the land and his residence thereon thereafter render him a trespasser and wrongdoer, that is, he had no lawful right to go upon the land either as between himself and the government, or as between himself and the state as the grantee of the government. He must have known, or

at least is presumed to know, that the disposition of the land embraced in the abandoned military reservation must be under and according to the terms provided by congress, and that no valuable right could be acquired by settlement or improvement unless authorized by congressional enactment.  He was charged with knowledge of the act which provided for the disposition of these lands and in which the state was accorded the first right to select and secure title to the lands situated in the odd-numbered sections, when surveyed, as indemnity school lands.  He must have known that in such act no provisions are found giving to one settling upon such lands a right to acquire title under and by a homestead entry as against the state's right of selection within the time limited therein.

2. Allegations are found in the answer of the defendant to the effect that, before the state made its selection of lands in lieu of and as indemnity for school lands lost and in which is included the land in controversy, it had selected other lands in lieu of some of the lands which were described as indemnity school lands lost by the state, and that, while some of the lands described in said list so selected as school lands lost by the state were in fact actually lost by it, yet some of them had been replaced by other lands selected in said list, and thereby, and by reason thereof, the said list was uncertain, indefinite, invalid and utterly void.  If we understand the pleading correctly, the validity of the entire list of lands with the descriptions thereof as made by the commissioner of public lands and buildings under the act mentioned is void because, as is sought to be alleged, some of the bases assigned for one or more of the selections made had been exhausted by a prior selection on behalf of the state of other lands as school indemnity for school lands lost, and to which the state was entitled under the provisions of the enabling act.  There is no statement of fact showing any valid prior selection which would have the effect of depriving the state of the right to select all lands included in the list, which embraces the land claimed by defendant.  It is not

averred that the bases assigned in the selection of any of
these lands were exhausted by a selection and conveyance
of other lands to which the state had acquired a perfect
title. No fact is alleged from which it can be inferred
that any of the lands included in the list last selected were
not lands which the state is entitled to receive under the
provisions of the act of congress of March 3, 1893. In
truth, in other portions of the answer it is alleged without
qualification that the lands selected by the commissioner
of public lands and buildings under the provisions of that
act were in lieu of lands lost to the state under the grant
contained in the enabling act, and as school indemnity for
school lands lost as contemplated by the original act. This
of itself is a solemn admission that the lands selected and
claimed by the state were in lieu of other lands theretofore
lost, and which it was entitled to receive for the use of the
common schools. The selections of the lands made in the
case at bar were made within the year limited by the act
granting the same, and during which time no valid rights
of third parties could intervene. The selections thus made
being valid, the plea of a prior selection of other land
without the allegation of other facts is manifestly not the
pleading of an issuable fact, but of a conclusion only of
the pleader, and states no ground of defense to the plain-
tiff's cause of action. Again, it is not believed that the
defendant can be heard to raise this question as the ad-
justment of the amount of lands granted in lieu of others
to which the state is entitled is a matter exclusively for
the government and the state. It can hardly be doubted
that the government might grant to the state any portion
of the public domain that congress saw fit and wise to
bestow upon it, where no private rights had attached.

3. The question is presented as to the authority of the
state to select the land in controversy with the other lands
selected by it by the adoption of the method resorted to
for the accomplishment of the desired object. It is argued
that this authority cannot be delegated by the legislature
to the commissioner of public lands and buildings, but

that the selection must be made by the board of educational lands and funds, which by the constitution is charged with the duty of managing and controlling educational lands and funds held by the state in trust for the use and benefit of its common schools. The constitutional provisions appealed to are not applicable to the means employed by which title to lands are acquired for the benefit of the public schools, but only to the control and management thereof after the title has become vested in the state. The grant of the lands in controversy comes from congress. It is in the nature of a gift to the state to be held in trust for the benefit of the common schools. The terms of the grant or gift are a matter of regulation by congress, and its acceptance may be by the state through its legislature or by an authorized agent selected for that purpose, and this would in no wise infringe on any provisions of the fundamental law. It is not until the gift has become effective and the title vested in the state in trust that the board of educational lands and funds by virtue of constitutional provisions become clothed with the exclusive authority to control and manage such lands and the proceeds thereof for the benefit of the common schools. We find nothing in the concurrent resolution accepting the terms of the act of congress granting the lands to the state, nor of the action of the state's agent, the commissioner of public lands and buildings, in making the selection of the lands thus granted, that in any way contravenes any of the provisions of the organic law.

4. What has heretofore been said necessarily leads to a conclusion adverse to the contention of the defendant. There arises, however, another question to be considered and determined. This question involves the construction and validity of an act of the legislature passed in 1901, ch. 115, laws, 1901, entitled "An act for the relief of" the defendant, naming him, and three others, and to authorize the governor to execute a deed of relinquishment to the United States of the land in controversy and other lands to enable the said defendant and the other persons men-

tioned therein to each perfect his entry and title to said lands under the homestead laws of the United States. After several whereases reciting the facts relating to the land in controversy similar to those hereinbefore disclosed in the opinion, it is enacted that the governor is authorized and directed to execute a deed of relinquishment to the United States, conveying any and all interests of the state of Nebraska in and to the land in controversy and other lands as therein described to enable the said defendant and other persons therein named to perfect their entry of and title to said tracts of land under the homestead laws of the United States. The validity of the act is challenged by the state on different grounds, but principally for the reason that it violates the provisions of the constitution relating to the control, management and disposition of the educational lands belonging to the state and held by it in trust for the use and benefit of the common schools. Whether the act contravenes the fundamental law must, we think, be determined by the nature of the title and interest held by the state to the lands in controversy at the time of the passage and approval of the act under consideration. If the state's title had been perfected, if a title in fee simple had at the time vested in the state, and nothing further was to be done in order that its ownership of these lands should be that of the holder of an absolute and indefeasible title the same as that of other common school lands held by it under the original grant, then, in our judgment, the conclusion is irresistible that such lands can only be disposed of in the manner and under the terms and conditions pointed out by the constitution regulating the control and disposition of all educational lands owned by the state. If, on the other hand, the state's title was not perfected, and something further was required to be done in order to render its title absolute and unqualified, it would seem that the exercise of the same power which authorized the acceptance of the proffered grant might provide for its relinquishment, and no fundamental provisions of law are violated thereby.

Had the state's title become absolute?   The answer must, we are of the opinion, be in the affirmative.   The congressional act heretofore noticed made a present grant of all school indemnity land which the state might select in the odd-numbered sections in lieu of other lands lost, as contemplated by the original grant, if selected at any time within one year after a survey of the land and the filing of the plats thereof in the local land office.   The legislature accepted the terms of the grant and authorized the selection of the lands granted by the commissioner of public lands and buildings.   The selections were made in due form within the time limited and a list thereof filed with the secretary of the interior, approved by him, and the lands thus selected and designated were by the proper authority set apart and noted upon the records as school indemnity lands belonging to the state of Nebraska. This was the final act of transfer, the livery of seisin, and thereby was vested in the state full, complete and absolute title to the lands as thus granted, selected and accepted as indemnity lands for other lands lost in place.   As was said by the California supreme court:   "The state, by the act of congress, received a present grant of five hundred thousand acres of land, to be selected out of such lands as were open to selection, in such a manner as the state, by its legislature, should direct.   'When the selection and location are once made pursuant to the directions, of lands not reserved, but subject to location, the general gift of quantity becomes a particular gift of the specific lands located, vesting in her a perfect and absolute title to the same.' "   *Bludworth v. Lake,* 33 Cal. 255, and authorities therein cited.

Section 8, article VIII of the constitution, declares that common school lands which are now held or may hereafter be acquired by the state for educational purposes shall not be sold for less than seven dollars an acre, nor less than the appraised value.   The act in question contravenes this provision of the constitution, for it in effect contemplates a gift of the state's interest in the land in

controversy to the defendant, assuming such lands to be common school lands, as we are constrained to hold they are. It is also declared by section 1, article VIII of the constitution, that the governor and the other state officers therein named shall, under the direction of the legislature, constitute a board of commissioners, for the sale, leasing and general management of all lands and funds set apart for educational purposes. The act under consideration conflicts with the above provisions and must give way to the paramount law. It is not within the power of the legislature to authorize the control, sale or leasing of school lands by an officer or individual other than those named in the organic law. *State v. Scott,* 18 Neb. 597. The act of the legislature purporting to authorize the governor to convey the state's interest and title as thus acquired to the United States for the benefit of the defendant, and in order to permit him to perfect his homestead entry, must be held inoperative and wholly void.

In considering this case, we have not been unmindful of the fact that the defendant, who is in a measure innocent, is the victim of circumstances which work a great hardship on him, but this hardship cannot rightfully be obviated by the violation of a sacred trust imposed upon the state and those chosen to administer its affairs relating to the lands and funds belonging to the common schools, which should ever be kept inviolate and used and disposed of only in the execution of the trust. While the legislature no doubt may grant to the defendant, if in its wisdom it sees fit so to do, some measure of relief, in so doing due regard must be had to the greater interests of the state, which, if observed, require a faithful administration of affairs pertaining to the management and disposition of the school lands and funds as contemplated by constitutional provisions, and thereby promote the efficiency of the common schools in which all are alike interested. The demurrer is sustained, and a judgment is ordered entered in favor of the state, as in its petition prayed.

JUDGMENT ACCORDINGLY.