CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

## SEPTEMBER TERM, 1918.

THOMAS L. BRIGGS, APPELLEE, v. KEITH NEVILLE ET AL.,
APPELLANTS.

FILED DECEMBER 14, 1918. No. 20717.

1. **Public Lands: MINERAL RIGHTS.** The decision in *Fawn Lake Ranch Co. v. Cumbow*, 102 Neb. 288, is adhered to.

2. **Constitutional Law: STATUTE: MINERAL LANDS: LEASES.** Chapter 7, Laws of the Extraordinary Session, 1918, does not violate sections 11, 13, or 15, art. III of our Constitution, nor the Fourteenth amendment of the federal Constitution.

3. **Mineral Lands: LEASES.** Under that statute, all leases of mineral lands must be made to the highest bidder in open competition and upon due notice.

4. ———: ———: RIGHTS OF AGRICULTURAL LESSEE. The lessee of mineral rights cannot interfere in any respect with the rights of the agricultural lessee to his damage, without providing for and satisfying such damage. If such claim for damages cannot be otherwise adjusted, a court of equity would take jurisdiction.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD and WILLIAM M. MORNING, JUDGES. *Reversed, with directions.*

*Willis E. Reed, Attorney General, Charles S. Roe* and *George W. Ayres,* for appellants.

*F. M. Tyrrell, W. A. Dilworth* and *J. H. Walker, contra.*

*Stout, Rose & Wells,* for lessees.

SEDGWICK, J.
These defendants, as the state board of educational lands and funds, were about to lease the mineral rights

(1)

in school lands belonging to the state, and this plaintiff, who holds a prior lease of the lands, brought this action in the district court for Lancaster county to enjoin the execution of the proposed lease. The trial court found: "That said plaintiff is raising hay and live stock on said land, and that said lakes furnish water for his stock and to subirrigate his hay land; that by means of such subirrigation he is enabled to grow enough hay to feed his stock during the winter, and that without the same such hay could not be produced. The court further finds that the defendants, as a board, and under chapter 7 of the enactments of the extraordinary session of the legislature of 1918, are about to lease said school land to parties who will immediately drain said lakes in the extraction of potash from their waters, and that thereby the plaintiff will be deprived of valuable property rights in the respect indicated. The court finds with respect to the enactment of said chapter 7 that it is void in so far as it attempts to authorize the defendants to so lease the described land during the term of plaintiff's present lease and that as to plaintiff and as to the land in question it contravenes the provisions of the Constitution against the impairment of contracts and against the taking of private property for public use without just compensation."

The defendants had leased the mineral rights in the lands in question before the decision of this court in *Fawn Lake Ranch Co. v. Cumbow*, 102 Neb. 288, which lease was void under that decision, and the defendants were proposing to execute a preference lease to the same lessee under the provision of section 16, ch. 7 of the Laws of the Extraordinary Session of the Legislature in 1918. In the *Cumbow* case, above referred to, it was held: "The removal of mineral from land lessens the value of the inheritance, and constitutes waste, which is forbidden by the terms of the school land lease under which plaintiff claims and by the statute relating to school lands." And: "Under section 1, art. VIII of the Constitution, the board of educational lands

and funds is vested with the power of sale, leasing, and general management of school lands under the direction of the legislature and in such manner as may be prescribed by law." And that under the statutes as they then existed the state board had no authority to dispose of mineral rights in the school lands of the state, except the right to take sand and gravel therefrom as provided in section 5855, Rev. St. 1913. Without further discussion, therefore, it must be held that this plaintiff by his agricultural lease obtained no right to the potash and other minerals that might exist in the land. As these minerals are much more valuable than the agricultural lease, and all interests of the lessee thereunder, it follows that the state can remove the same from the land after making due compensation to the former lessee for any injury caused thereby to the leasehold estate, there being an implied reservation of the right of entry for that purpose.

The questions now to be determined are : (1) Whether the act of the legislature of 1918 is constitutional and valid; and, if so, (2) what is the meaning and construction of the section of the statute under which the board was proposing to proceed in making the lease in question; and (3) whether by the proposed action of the board the rights of this plaintiff in the lands in question would be unlawfully invaded.

By section 13, art. III of the Constitution, a state officer is not allowed to "be interested either directly or indirectly, in any contract with the state," which is "authorized by any law passed during the term for which he shall have been elected." If it is a fact that one of the members of the legislature is directly or indirectly a party to some of these contracts, this provision of the Constitution would prevent him from claiming any rights under such contract, but it would not necessarily render this act of the legislature void.

The statute in question appears to be complete in itself, and is not an amendment of sections 5845-5875,

Rev. St. 1913, and is therefore not a violation of section 11, art. III of the Constitution.

It does not appear to be an attempt to grant special privileges, immunities and franchises, nor to abridge the rights, privileges and immunities of citizens of the United States, and is therefore not in violation of section 15, art. III of the Constitution, nor the Fourteenth amendment of the federal Constitution in those respects. The act is not invalid for any of the reasons suggested.

Section 16 of the act is as follows: "The holders of mineral leases heretofore granted by the board of educational lands and funds, which leases have been declared invalid, may apply, under the direction of this act, for new leases, and the board may in its discretion determine if the bonus and royalty is equal or better than the *bona fide* competitive bids. If the lessee has made extensive or expensive preparation and is prepared for proceeding with development, the board may in its discretion consider the same and issue new leases to said lessee under and by virtue of this act."

The construction of this section is not without difficulty. Attorneys for other lessees interested in the result of this litigation were granted leave by the court to file a brief in their behalf, and in this brief they have presented a very interesting discussion of the meaning of this section. It is therein argued that this section of the act "intended to vest in the board power to give some measure of relief to the holders of mineral leases previously granted, all of which, the act recites, have been declared invalid—particularly to those who have made either extensive or expensive preparation, and are prepared for proceeding with development." The board has to do with the interest of the state, and as the state was to share in the profits of the undertaking by obtaining a market for its minerals, and as these profits might be much greater by special demand for these products under the circumstances existing when the legislation was enacted, the board might consider those matters in determining the advantage that would come

to the state under the respective bids. If a bidder specifies the extent and expensiveness of his preparation to proceed with the work under a former void contract, the board might "consider the same and issue new leases to said lessee under and by virtue of this act," and should determine upon careful investigation what advantage the state would necessarily derive from the fact that the work might be sooner and more effectively done because of their extensive and expensive preparations. The provision that the board may "determine if the bonus and royalty is equal or better than the *bona fide* competitive bids" cannot be complied with unless there have been "*bona fide* competitive bids." Therefore we must determine how the bonus and royalty is to be compared with the competitive bids, to determine whether it is equal or better. By section 9 of the act, when there is more than one applicant for the same land, "the rights thereon may be awarded to the legally qualified applicant paying the highest and best bid, to be determined by taking into consideration both the bonus and royalty, the award being made after proper legal notice in such manner as the state board shall determine best calculated to protect public interest." The board should call for competitive bids as the statute contemplates, and the holders of these invalid leases may bid with others, and specify in their bids the bonus and royalty provided for in their former contracts. If the lessees have paid money into the state treasury under the contracts that have been declared void, such payments would, as a matter of course, be taken into consideration and allowed by the board as payments upon their lease if they were successful bidders. If they were not successful bidders, money so paid on their former void contracts would be returned to them. The legislature would make appropriation for that purpose if necessary. As the statute now is, the board might include more than one tract of land in a proposed lease of mineral rights, if in their reasonable discretion the state would realize larger returns by so doing. If the

respective tracts were offered sperately in separate proposed leases, and at the same time offered collectively in one proposed lease, it could readily be determined which bids were more advantageous to the state.

The briefs, so far as we have noticed, do not refer to the particulars of any legal notice given, and it seems to be conceded that this plaintiff was offering more for these mineral rights than the parties to whom the board was proposing to make the lease, and the plaintiff's offer was being refused without any investigation on the part of the board as to the relative advantages that would accrue to the state under the respective offers. This was a violation of the statute, and should have been enjoined by the court.

Some of the provisions of the statute are not as clear as perhaps might be desired, but it appears to make provision for compensating the agricultural lessees for damages they may suffer under these leases of mineral rights. Section 8 of the act contains provisions as to the terms of leases of mineral rights, and contains a clause: "Lessee shall pay for all damages to growing crops, caused by his operations, and for the use of the land necessarily occupied." It is contended that the act does not contain any provision for ascertaining the amount of these damages, but if the lessee of these mineral rights is not authorized under his lease to interfere in any respect with the rights of the agricultural lessee without providing for and satisfying such damages, and if he is willing to accept the lease upon those terms, the rights of the agricultural lessee are not injured by this statute. The lessee of the mineral rights would rely upon being able to make reasonable adjustment with the former lessee, and he could not be wholly and arbitrarily deprived of his right to extract these minerals by unreasonable demands of the former lessee. It is suggested in the briefs that the state might exercise its right of eminent domain, and provide some adequate method of ascertaining the damages of the agricultural lessee, and protecting him in

all his rights under his lease until such damages are paid, and so make the mineral lease effective. The legislature will soon be in session and may see proper to amend the statute in that respect. If there is no other method provided for adjusting such claims of damage, a court of equity might provide a method. The trial court, therefore, was wrong in enjoining the defendants from issuing mineral leases "to any person save the plaintiff until the present agricultural and grazing lease shall have expired, or been duly forfeited, or renounced according to law."

The decree of the district court is reversed and the cause remanded, with instructions to enter a decree enjoining the defendants from leasing the mineral rights of the state without competitive bids as herein indicated.

REVERSED.

MORRISSEY, C. J., and ROSE, J., took no part in this decision.