## STATE OF NEBRASKA v. UNITED STATES et al.

### No. 13578.

Circuit Court of Appeals, Eighth Circuit.

Dec. 23, 1947.

Robert A. Nelson, Asst. Atty. Gen. of Nebraska (Walter R. Johnson, Atty. Gen. of Nebraska and C. S. Beck, Deputy Atty. Gen., on the brief), for appellant.

S. Billingsley Hill, of Washington, D. C., Atty., Department of Justice (A. Devitt Vanech, Asst. Atty. Gen., Roger P. Marquis and Jason D. Lee, both of Washington, D. C., Attys., Department of Justice, and Joseph T. Votava, U. S. Atty., of Omaha, Neb., on the brief), for appellee United States of America.

R. H. Beatty, of North Platte, Neb., and Lowell C. Davis, of Sidney, Neb. (R. P. Kepler and Paul L. Martin, both of Sidney, Neb., and M. C. Murphy, of North Platte, Neb., on the brief), for appellees Clara H. McNish, T. C. Spiker and Rush C. Clarke, special administrator of estate of Olive E. Jones, deceased.

Before GARDNER, THOMAS and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The United States instituted condemnation to acquire some 19,500 acres of land in Cheyenne County, Nebraska, in fee simple, as a site for an ammunition storage depot. Two sections in the tract were lands which had been granted to the State of Nebraska under its enabling act, 13 Stat. 47, 49, § 7, "for the support of common schools". At the time of the condemnation, these sections had been leased by the State to private individuals for agricultural purposes for unexpired terms of years.

On a trial of the issue of just compensation, the court instructed the jury to determine the fair market value of each of the two sections at the time of the taking (the matter of interest being deferred until the entry of judgment) as the measure of the Government's obligation for their condemnation.[1] This value was required to be set out in the verdict. The jury was further instructed to find the fair market value of the lease on each section; to return a verdict for this amount as the compensation due the lessee; to subtract this amount from the market value found for the land; and to return a verdict for the difference as the compensation due the State.[2] From the judgment entered on the verdicts, so returned, the State has appealed.

Because the two sections were school lands, which the courts of Nebraska have held that the State received as a trust for its common school system,[3] the State contends that the United States should have been required to pay it as just compensation an amount equal to the full value of the fee without any deduction for the outstanding leaseholds. It does not deny that the unexpired leases (each of which in the present case had more than 8 years left to run) constitute property or have value, for which the United States must pay compensation to the lessees, and under its own statutes and court decisions it would hardly have been possible for it to have taken such a position.[4] It merely argues that the United States should pay the State the value of the full fee simple estate and the lessee the value of his leasehold interest as separate and additional compensation.

The rule which the State seeks to have applied is the Nebraska rule in any condemnation of state school lands made under a power of eminent domain granted by the State. See State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 166 A.L.R. 1196. The basis and effect of the cited case are that the State has accepted and holds title to these lands as a trust for its common school system and has no right to breach the trust; that the legislature of the State therefore may not authorize an alienation or other disposition of the fee (such as a taking of the title under a grant of the power of eminent domain would accomplish) unless there is paid to the State the full fee value of the property; and that hence any leasehold interest created by the State in such lands, while constituting property for whose value the lessee on a condemnation is entitled to compensation under the Constitution and statutes of the State, must be evalued separately and paid for by the condemnor beyond the value of the fee.

But these considerations and concepts are not controlling in this proceeding. What constitutes property and what is just compensation for it in a condemnation by the United States are not questions of state law but of federal law. United States v.

---

[1] Questions of compensation for crops and improvements belonging to the lessees have been disposed of and are not here involved.

[2] The views of the District Court are set out in a memorandum opinion written on motion for a new trial, appearing in United States v. 19,573.59 Acres of Land in Cheyenne County, D.C.Neb., 70 F. Supp. 610.

[3] See State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 166 A.L.R. 1196; State ex rel. Johnson v. Central Nebraska Public Power & Irrigation Dist., 143 Neb. 153, 8 N.W.2d 841; State v. Tanner, 73 Neb. 104, 102 N.W. 235.

[4] Cf. State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 306–308, 166 A.L.R. 1196, and cases cited in that opinion.

Miller, 317 U.S. 369, 379, 380, 63 S.Ct. 276, 283, 87 L.Ed. 336, 147 A.L.R. 55. Of course, the term "property" in such a situation normally will be given the same content as in state law. United States v. Powelson, 319 U.S. 266, 279, 63 S.Ct. 1047, 1054, 87 L.Ed. 1390; and also cf. United States v. Petty Motor Co., 327 U.S. 372, 380, 381, 66 S.Ct. 596, 601, 90 L.Ed. 729. This does not mean, however, that every local idiosyncracy or artificiality in a state's concepts, or the incidents thereof, necessarily will be accepted. Thus, the United States could hardly be expected to recognize for condemnation purposes any such local artificiality in property concept as that a leasehold is not in any sense a dilution of fee rights but in point of law and regardless of fact adds body and value to the property.

We need not, however, deal with the question here as one of unacceptable property concept, and there is no occasion therefore for us to consider whether the Nebraska rule on school lands is intended to be in the nature of a special rule of property. The situation can be sufficiently disposed of as one of simply determining just compensation. In state concept as well as under general law, the rights of the State and the rights of the lessees in the school lands each constituted a property interest, and in this concurrence of concepts there manifestly would be no occasion to regard either of them otherwise in federal law for purposes of compensation in condemnation. But, as we have suggested, the question of what is just compensation under the Fifth Amendment for such rights does not turn in any manner upon the compensation standards or prescriptions of state law. If it did, the State of Nebraska in the present situation would have had as much right to argue that the United States should be bound by some artificial provision in its Constitution[5] (e. g. that in any condemnation of its school lands the State should be paid a value of $1,000 per acre) as by the rule of compensation which it has judicially adopted for such lands in the Platte Valley Public Power & Irrigation District case.

The general federal rule of compensation for condemnation of a fee is well settled. The measure of "just compensation" under the Fifth Amendment for the taking of property in fee simple ordinarily is the fair market value (or, as sometimes expressed, "market value fairly determined") of the property in fee ownership as of the time of taking[6] irrespective of the number and kind of interests existing in it. Cf. United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55; Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236; A. W. Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216; City of New York v. Sage, 239 U.S. 57, 61, 36 S.Ct. 25, 60 L.Ed. 143; United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 81, 33 S.Ct. 667, 57 L.Ed. 1063.

The rule manifestly is not without hardships in practical operation, but nevertheless the guarantee of the Fifth Amendment is regarded as being satisfied generally where the cash value of property taken in fee is substituted for it and the cash is allocated or apportioned among the respective estates or interests on the basis of their relative values.[7] Cf. United States v. Dunnington, 146 U.S. 338, 351, 352, 353, 13 S.Ct. 79, 36 L.Ed. 996; Meadows v. United States, 4 Cir., 144 F.2d 751, 753; United States v. Sunset Cemetery Co., 7 Cir., 132 F.2d 163, 165.

---

[5] Interestingly, the Nebraska Constitution of 1866, art. 7, § 2, as did those of a number of other western states, contained a provision fixing the minimum price per acre at which state school lands could be "aliened or sold." The provision was dropped in its later Constitution.

[6] If payment of the value is not made at the time of the taking, "just compensation" in condemnation also requires interest "from that date to the date of payment." Albrecht v. United States, 329 U.S. 599, 602, 67 S.Ct. 606, 608, 91 L.Ed. ——, and cases there cited.

[7] The rule is, of course, not applicable to situations where the United States does not take the whole estate or interest in property. See United States v. General Motors Corporation, 323 U.S. 373, 382, 65 S.Ct. 357, 89 L.Ed. 311, 156 A.L.R. 390; United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729.

Of course, like any other, the rule is not one that is autocratically absolute. "Exceptional circumstances will modify the most carefully guarded rule * * *." Mississippi and Rum River Boom Co. v. Patterson, 98 U.S. 403, 408, 25 L.Ed. 206. Thus, it has been recognized that it would be inequitable to apply the rule to lands taken by the United States which constitute a public highway that a state or one of its subdivisions has a duty to replace. See e. g. United States v. Des Moines County, 8 Cir., 148 F.2d 448, 160 A.L.R. 953.[8] Other instances of departure from the general rule that the jury should determine the value of the property as a whole and then divide this amount among the respective interests in it have occurred in Boston Chamber of Commerce v. City of Boston, 217 U.S. 189, 30 S.Ct. 459, 54 L.Ed. 725, and United States v. Certain Parcels of Land in City of Baltimore, D.C.Md., 43 F.Supp. 687, 689. But it is to be emphasized that the general rule of compensation in case of a taking of the fee by the United States is a "carefully guarded" one and that only in rare and exceptional types of situations have departures from it been permitted.

■ The present case does not in our opinion constitute any such type of situation. The evidence shows that each of the sections of school lands as a fee had a pecuniary value on the market beyond which obviously the State would not have been able to sell it.[9] That value was the same as for other land of equal quality and location in the community, free from the burden of a leasehold or other incumbering interest. In relation to the sovereign rights and constitutional obligation of the United States, the school lands therefore could not be said to be in any different position as to value and just compensation than the other lands of the community.

The compensation obligation of the United States was not increased by the fact that the State held the lands for the benefit of its common school system. The United States in originally granting the lands to the State had not guaranteed that the State would realize any amount out of them for the benefit of its schools. It did not agree that, should condemnation of such lands subsequently become necessary for its sovereign purposes, it would pay more than the fair market value of the land in compensation. It did not assume to save the State harmless in such a situation from a diminution in the market value of the State's rights through the creation of a leasehold, easement, or other interest in the land by the State's own acts.

As a matter of fact, except only as the State has undertaken to condition the exercise of its grant of the power of eminent domain over school lands, it has expressly recognized that it cannot expect to escape the pecuniary consequences of creating leaseholds in such lands. Thus, its courts have held that, where the State has made an agricultural lease on school land and desires thereafter to reenter for the purpose of removing minerals, it can do so only "after making due compensation to the former lessee for any injury caused thereby to the leasehold estate". Briggs v. Neville, 103 Neb. 1, 170 N.W. 188, 189. Similarly, where the Board of Educational Lands and Funds wishes to cancel a leasehold on school land that has been made a part of a federal forest reserve and the Board is unable to agree with the lessee on terms of surrender, the state statutes provide that the Board may condemn the leasehold and make payment of the determined just compensation for it. Neb.Rev.St.1943, § 72-255. This provision is designed to make possible exchanges of school lands of the State lying within a federal forest or game reserve "for other lands of equal areas and value belonging to the United States". Id., § 72-253. The State recognizes that it necessarily in such a situation must assume the financial consequences of having created leaseholds in the lands and that it can not expect the United States to bear the burden of its acts. Its argument here that on a condemnation of such lands the United States should pay for the value of any leasehold in addition to the full fee value of the property has no more equitable basis or validity than it would have in the situation covered by the cited statute.

---

[8] See also Annotation, 160 A.L.R. 955.
[9] Under its Constitution and statutes, the State of Nebraska may legally sell its school lands.

■ The trial court correctly instructed as to the governing rule of compensation in the situation and the method of apportioning the proceeds.

■ The other contentions of the State are wholly without merit. There clearly was sufficient foundation laid to entitle the trial court to receive the testimony of each of lessees' witnesses on the market value of the leasehold interests. And the testimony of each of such witnesses was specifically brought within the limitation of the Platte Valley Public Power & Irrigation District case, 147 Neb. 289, 23 N.W.2d at pages 308 and 310, 166 A.L.R. 1196, that a lessee's interest in Nebraska school lands is compensable only in so far as the lease rights have a value over and above six per cent per annum of the fair market value of the land, which is the amount of rent that the statute contemplates shall be paid to the State.

The judgment is affirmed.