UNITED STATES ex rel. and for Use of
TENNESSEE VALLEY AUTHORITY v.
BIRMINGHAM FERRY CO.

Civil Action No. 243.

United States District Court
W. D. Kentucky,
at Paducah.

Sept. 9, 1948.

570

Joseph C. Swidler, Gen. Counsel TVA, and Charles J. McCarthy, Asst. Gen. Counsel TVA, both of Knoxville, Tenn., and Thomas S. Waller, of Paducah, Ky, for petitioner.

R. Lee Blackwell, Thomas W. Bullitt, and Francis T. Goheen, all of Louisville, Ky., for respondent.

Before FORD and SHELBOURNE, District Judges.

PER CURIAM.

This is a condemnation proceeding by the United States on behalf of the Tennessee Valley Authority pursuant to section 25 of the Tennessee Valley Authority Act, 48 Stat. 70, 16 U.S.C.A. § 831x.

The parties, by their respective attorneys, stipulated in writing that the exceptions filed to the award of the Commissioners be heard before two Federal District Judges, as authorized by section 25 of the Act, and the case has been heard and submitted accordingly.

The purpose of the proceeding is the acquisition of the right, title and interest of the respondent, Birmingham Ferry Company, a Kentucky corporation, in two small tracts of land bordering on the Tennessee River, the taking of which was found necessary in connection with the construction of the so-called "Kentucky Dam" This dam is an essential part of the Tennessee River System, a vast project designed for the improvement of navigation and the control of devastating flood waters. 48 Stat. 58, 16 U.S.C.A. § 831.

The Tennessee River is a navigable stream. "The improvement of navigation on this river," said Chief Justice Hughes, "has been a matter of national concern for over a century." Ashwander et al. v. Tennessee Valley Authority, 297 U.S. 288, 328, 56 S.Ct. 466, 474, 80 L.Ed. 688.

It appears from the uncontroverted testimony of the Chief Engineer in charge of the operation of the System that prior to the improvements in the navigability of the River, in accordance with the plans inaugurated and carried out by T.V.A., the shallowness of the channel of the stream greatly curtailed its availability for modern commercial navigation. As the result of the construction of the System's nine (9) dams, including the Kentucky Dam, it is now possible for large tows drawing a depth of nine (9) feet to navigate the stream from the Ohio River to Knoxville, a distance of 630 miles and, in addition to this, there is a depth of 16 feet reserve at all times in the upper part of the Kentucky Reservoir, which materially aids in flood control.

No part of the Kentucky Dam is erected upon the lands sought to be taken in this proceeding, but the dam has raised the level of the stream to such an extent as to completely inundate both tracts. In its course from the Tennessee border through Kentucky, the Tennessee River flows almost due north to where it coincides with the boundary line between Lyon County on its east side and Marshall County on its west, thence flowing in a westerly direction it empties into the Ohio River at Paducah. The Kentucky Dam is constructed near the town of Gilbertsville, about 22½ miles above the mouth of the stream. By impounding the waters of the River, the dam creates what is known as the Kentucky Reservoir, the waters of which, for a great distance south of the dam, completely cover not only the original banks of the river but large areas of adjacent lands.

One of the tracts here involved embraces 0.6 of an acre adjoining State Highway No. 58 at the place where the highway intersects the river on the Lyon County (east) side. In this tract the respondent owns a 99 year leasehold interest. This land is designated in the record as "Tract GIR–1131." The other tract consists of 0.61 of an acre lying adjacent to the highway on the opposite side of the river in Marshall County. In this tract respondent owns the fee simple title to an undivided one-half (½) interest. The Government owns the other half. It is designated in the record as "Tract GIR–1209."

For many years prior to the flooding of these lands by the waters of the reservoir, under a franchise granted by the County Court of Marshall County and in later years under a Certificate of Necessity and Convenience issued by the Highway Commission of Kentucky, the respondent operated a public toll ferry across the river connecting the termini of Highway 58. Both tracts were essential to the operation of the ferry, in that, on their respective sides of the river they afforded the only practicable way of access and egress between the highway and respondent's ferry facilities.

The petition for condemnation, as well as the declaration of taking, limit this proceeding to the appropriation of the respondent's interest in the riparian lands above described and manifest no intention or purpose to acquire or take respondent's ferry franchise or business. There has been no actual appropriation of respondent's ferry rights or business to the public use and no such appropriation is intended. It is quite clear, however, that the incidental result or consequence of flooding and thereby taking respondent's riparian lands has completely and permanently frustrated the further exercise of its ferry franchise and has destroyed its ferry business.

The question which is at the center of the controversy between the parties and which demands our primary consideration is whether respondent's franchise to operate the ferry upon the river and its ferry business constitute "private property," within the meaning of the Fifth Amendment to the Constitution of the United States and were such an integral part of the property taken that the value thereof must be included in the award to which respondent is entitled under the Constitutional provision "* * * nor shall private property be taken for public use, without just compensation."

In support of its claim that the value of its franchise and ferry business is an essential element in determining the fair value of the property, by reason of the inseparable relation of the land to the ferry rights and operations, the respondent cites Conway et al. v. Taylor's Executor, 1 Black 603, 66 U.S. 603, 17 L.Ed. 191, and numerous Kentucky decisions as well as decisions of the Courts of other states, holding, in substance, that the authority to establish and regulate ferries is within the powers reserved to the several states, and a ferry franchise granted by a state is a property right of value, an incorporeal hereditament, appurtenant to the riparian land in connection with which the right is exercised.

Without reviewing these cases in detail, it is sufficient to observe that they neither answer our question nor solve our problem. They deal only with conflicting claims under state laws. None of them involve the status of a claimed property right granted by a state in or to the use of

the waters of a navigable stream as against or in conflict with the Constitutional right and title therein of the Federal Government for the purpose of regulating, controlling and improving navigation. None of them have any bearing upon the Constitutional question here presented. Such a problem presents a question of Federal law, the answer to which must be found in the applicable decisions of the Supreme Court. United States v. Miller, 317 U.S. 369, 379, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55; State of Nebraska v. United States, 8 Cir., 164 F.2d 866, 868.

Section VIII of Article I of our National Constitution confers upon the Congress the power to regulate commerce among the several states and the power "to make all laws" necessary and proper for carrying that power into execution. Article VI, cl. 2, provides that such laws shall be the Supreme law of the land "any thing in the Constitution or Laws of any State to the Contrary notwithstanding."

■ "All America understands, and has uniformly understood, the word 'commerce' to comprehend navigation," said Chief Justice Marshall in Gibbons v. Ogden, 9 Wheat. 1, 22 U.S. 1, 190, 6 L.Ed. 23, and, according to Mr. Justice Swayne, speaking for the Court in Gilman v. Philadelphia, 3 Wall. 713, 70 U.S. 713, 724, 18 L.Ed. 96, "The power to regulate commerce comprehends the control for that purpose, and to the extent necessary, of all the navigable waters of the United States which are accessible from a State other than those in which they lie. For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress."

In Scranton v. Wheeler, 179 U.S. 141, 163, 21 S.Ct. 48, 57, 45 L.Ed. 126, the Court makes it clear that whatever may be the nature of a grant by a state to a riparian owner to use the waters of a navigable stream or the submerged lands in front of his upland bordering thereon, "It is a qualified title, a bare technical title, not at his absolute disposal, as is his upland, but to be held at all times subordinate to such use of the submerged lands and of the waters flowing over them as may be consistent with or demanded by the public right of navigation."

In Union Bridge Company v. United States, 204 U.S. 364, 400, 401, 27 S.Ct. 367, 380, 51 L.Ed. 523, the Court makes it plain, "under the cases cited, and upon principle," that a grantee who exercises rights and powers in and to a navigable stream under a grant from a state is chargeable with knowledge of the paramount authority of Congress in respect to the stream and the possibility that at some future time, when the public interest demands, such paramount power may be exercised by appropriate legislation; and that if in so doing, the beneficiary of the state grant suffers a loss in the frustration of his right to use a navigable stream, it "will not amount to a taking of private property for public use for which compensation need be made."

In United States v. Chandler-Dunbar Water Power Co., 229 U.S. 53, 62, 69, 33 S.Ct. 667, 674, 57 L.Ed. 1063, the Court re-affirmed the principle previously announced as to the qualified nature of the title of a riparian owner in and to navigable waters in front of his uplands, and added: "But whether this private right to the use of the flow of the water and flow of the stream be based upon the qualified title which the company had to the bed of the river over which it flows, or the ownership of land bordering upon the river, is of no prime importance. In neither event can there be said to arise any ownership of the river. Ownership of a private stream wholly upon the lands of an individual is conceivable; but that the running water in a great navigable stream is capable of private ownership is inconceivable."

In Lewis Blue Point Oyster Cultivation Co. v. Briggs, 229 U.S. 82, 87, 33 S.Ct. 679, 680, 57 L.Ed. 1083, commenting upon the dominant and superior title of the Government in and to the waters and submerged lands of navigable streams, the Court said: "This right to control, improve, and regulate the navigation of such waters is one of the greatest of the powers delegated to the United States by the power to regulate commerce. Whatever power the several states had before the

Union was formed, over the navigable waters within their several jurisdictions, has been delegated to the Congress, in which, therefore, is centered all of the governmental power over the subject, restricted only by such limitations as are found in other clauses of the Constitution." And re-affirmed the rule that, "By necessary implication from the dominant right of navigation, title to such submerged lands is acquired and held subject to the power of Congress to deepen the water over such lands, or to use them for any structure which the interest of navigation, in its judgment, may require. The plaintiff in error has, therefore, no such private property right which, when taken, or incidentally destroyed by the dredging of a deep-water channel across it, entitles him to demand compensation as a condition."

Greenleaf-Johnson Lumber Company v. Garrison, 237 U.S. 251, 35 S.Ct. 551, 59 L. Ed. 939, and New Jersey v. Sargent, 269 U.S. 328, 46 S.Ct. 122, 70 L.Ed. 289, are in accord with the preceding authorities on the point.

Following these cases, we find United States v. Appalachian Electric Power Co., 311 U.S. 377, 423, 61 S.Ct. 291, 307, 85 L. Ed. 243, in which it is said: "The respondent is a riparian owner with a valid state license to use the natural resources of the state for its enterprise. Consequently it has as complete a right to the use of the riparian lands, the water, and the river bed as can be obtained under state law. The state and respondent, alike, however, held the waters and the lands under them subject to the power of Congress to control the waters for the purpose of commerce. * * * The Federal Government has domination over the water power inherent in the flowing stream. It is liable to no one for its use or non-use. The flow of a navigable stream is in no sense private property; 'that the running water in a great navigable stream is capable of private ownership is inconceivable.' Exclusion of riparian owners from its benefits without compensation is entirely within the Government's discretion."

In United States ex rel. T.V.A. v. Powelson, 319, U.S. 266, 281, 63 S.Ct. 1047, 1055, 87 L.Ed. 1390, in the course of

significant comments upon the fact that many incidental losses suffered as the result of condemnation are not compensable, the Court draws attention to the distinguishing facts of the case of Monongahela Navigation Co. v. United States, 148 U.S. 312, 13 S.Ct. 622, 37 L.Ed. 463, which likewise make it inapplicable here, thus: "There are numerous business losses which result from condemnation of properties but which are not compensable under the Fifth Amendment. The point is well illustrated by two other lines of cases in this field. It is a well settled rule that while it is the owner's lose, not the taker's gain, which is the measure of compensation for the property taken (United States v. Miller, supra; United States v. Chandler-Dunbar Water Power Co., supra, 229 U.S. page 81, 33 S.Ct. [667] page 678, 57 L.Ed. 1063; Boston Chamber of Commerce v. Boston, 217 U.S. 189, 195, 30 S.Ct. 459, 460, 54 L. Ed. 725), not all losses suffered by the owner are compensable under the Fifth Amendment. In absence of a statutory mandate (United States v. Miller, supra, 317 U.S. page 376, 63 S.Ct. [276] page 281, 87 L.Ed. 336) the sovereign must pay only for what it takes, not for opportunities which the owner may lose. See Orgel, Valuation Under Eminent Domain (1936) § 71, § 73. On the one hand are such cases as Monongahela Navigation Co. v. United States, supra, where it was held that the United States had appropriated a going enterprise to its own ends and must make compensation accordingly. But it is well settled in this Court that, 'Frustration and appropriation are essentially different things.' Omnia Commercial Co. v. United States, supra, 261 U.S. [502] page 513, 43 S.Ct. [437] page 439, 67 L.Ed. 773. Thus in Mitchell v. United States, 267 U. S. 341, 45 S.Ct. 293, 69 L.Ed. 644, the owner was denied compensation for the destruction of his business which resulted from the taking of his land for a public project even though the business could not be reestablished elsewhere. This Court, after noting that 'settled rules of law' precluded a consideration of 'consequential damages' for losses of a business or its destruction, stated: 'No recovery therefor can be had now as for a taking of the business. There is no finding as a fact that

the government took the business, or that what it did was intended as a taking. If the business was destroyed, the destruction was an unintended incident of the taking of land.' 267 U.S. page 345, 45 S.Ct. [293] page 294, 69 L.Ed. 644. That which is not 'private property' within the meaning of the Fifth Amendment likewise may be a thing of value which is destroyed or impaired by the taking of lands by the United States. But like the business destroyed but not 'taken' in the Mitchell case it need not be reflected in the award due the landowner unless Congress so provides."

In United States v. Willow River Power Co., 324 U.S. 499, 509, 65 S.Ct. 761, 767, 89 L.Ed. 1101, referring to a claim of a shore owner that he had an appurtenant property right in the natural level of the water in front of his lands and to the use thereof, the Court said: "It constituted a privilege or a convenience, enjoyed for many years, permissible so long as compatible with navigation interests, but it is not an interest protected by law when it becomes inconsistent with plans authorized by Congress for improvement of navigation. * * * the private interest must give way to a superior right, or perhaps it would be more accurate to say that as against the Government such private interest is not a right at all."

■ These decisions seem amply sufficient to set at rest any doubt as to the power of the Federal Government to make such changes in a navigable stream as may be necessary in the interest of navigation without payment of compensation for incidental or consequential losses resulting from the destruction of business operations under a state granted franchise to make commercial use of such waters.

■ That, for the purpose of improvement of navigation, the dominant title to the waters of the Tennessee River is and, since the adoption of the National Constitution has been, in the Federal Government, seems now to be removed from the realm of debate.

■ The grant to respondent by the state of a franchise to operate a ferry business upon the surface of its waters, while good as between the respondent and other riparian owners, does not displace or impair the title of the Federal Government.

■ Obviously the State is without power to subordinate the title of the Federal Government created by the Constitution and laws of the United States. Whatever may be the laws of the State in respect to making the right to use navigable streams appurtenant to shore lands, they are unavailing as against the Federal Government, for the laws of the United States are the supreme law of the land "any thing in the * * * Laws of any State to the Contrary notwithstanding." Article 6, cl. 2.

■ When the respondent acquired its ferry franchise from the agencies of the State, it was chargeable with the knowledge that its privilege to use the surface of the water of the Tennessee River for its commercial ferry enterprise might be frustrated or destroyed at any time by the Government's exercise of its power to alter the stream in the interest of navigation.

■ As against the Government of the United States, respondent's ferry franchise vested no property right in the waters of the stream and, consequently, the incidental frustration thereof, which necessarily resulted from the Government's alteration of the stream in the interest of navigation, was a loss for which, in the absence of Congressional legislation, the Government is not required to make compensation under the Fifth Amendment.

■ In awarding the respondent just compensation for the property taken herein, the Commissioners properly excluded from consideration all elements of value attributable to respondent's use of the surface of the river for the operation of its ferry, however valuable such operation may have been as a commercial enterprise.

In view of our conclusions upon these main questions, other issues presented in the record such as the fair market value of respondent's ferry franchise and ferry business, as to whether respondent's ferry franchise was valid under State law, as to whether respondent's certificate of public necessity and convenience was acquired in good faith and as to whether, prior to this

proceeding, respondent had abandoned the exercise of its rights under the franchise, are questions which we do not reach. Discussion of them is therefore unnecessary.

This brings us to the question as to the amount which the respondent is entitled to be awarded as just compensation for its interest in the property taken and appropriated to the public use in this proceeding. It is entitled to the fair market value thereof and this should reflect not only the use to which the property is presently devoted but also the use to which it may be readily converted. The burden of establishing such value rests upon the owner. United States v. Powelson, supra.

We find from the evidence that, excluding from consideration all elements of value attributable to respondent's claimed right to the use of the stream for the operation of its ferry business, the fair market value of and just compensation for respondent's interest in Tract No. GIR–1131 is One Hundred and Seventy-Five Dollars ($175) and the fair market value of and just compensation for its interest in Tract No. GIR–1209 is the sum of One Hundred and Twenty Dollars ($120), a total for the two tracts of Two Hundred and Ninety Five Dollars ($295), the amount awarded by the Commissioners.

The petitioner will prepare and submit for entry a judgment in conformity herewith.