## FAIR-WAY OIL COMPANY ET AL., APPELLEES, V. STATE OF NEBRASKA, APPELLANT.

### 272 N. W. 917

FILED APRIL 30, 1937.   No. 29834.

William H. Wright, Attorney General, Paul P. Chaney and Henry Mencke, for appellant.

Robins & Yost, contra.

Heard before GOSS, C. J., DAY, PAINE and CARTER, JJ., and TEWELL and YEAGER, District Judges.

TEWELL, District Judge.

This action is brought by the plaintiffs, Fair-Way Oil Company, a corporation, and A. J. Conrad, to recover damages alleged to have occurred to their leasehold interest in a portion of a lot in the city of Blair, Nebraska. A gasoline filling station had been built on the lot by the plaintiffs. The damages are alleged to have arisen on account of a change made in the grade of a street by the department of roads and irrigation. Trial by jury was waived and the cause was tried to the court. From a judgment awarding damages to plaintiffs the defendant appeals.

A resolution of the legislature gave the consent of the state to the commencement of this action. State of Nebraska is the defendant.

The evidence discloses that the property in which the plaintiffs own a leasehold interest consists of the north 140 feet of a lot. Eighth street, which extends from north to

south, forms the eastern boundary of this lot, and South street, which extends from east to west, forms the northern boundary thereof. Prior to the change in the grade of the street, South street, including the portion thereof that is also a portion of Eighth street, hereinafter called the intersection, was paved. Before the change in the grade state highway No. 73 extended northward on Eighth street to this intersection and then turned westward on South street. At the time of the change in grade this highway was routed along Eighth street and then northward from such intersection. Plaintiffs leasehold interest extended from May 1, 1932, to May 1, 1934, with a privilege of a four-year renewal and with an option to purchase the lot during the period of the lease. At the time plaintiffs erected their filling station the said intersection was paved and plaintiffs did not know of any contemplated change of its grade. At that time South street as it approached the intersection from the west sloped downward, and Eighth street as it approached such intersection from the south sloped upward. The change in the grade of Eighth street, made in preparation for the paving of such street, resulted in such intersection being raised about 4 inches at its center, and about 14 inches at its south edge. The center of Eighth street was raised about 22 inches at a point 100 feet south of the center of such intersection. The surface of Eighth street was thus raised above the surface of the lot to such an extent that trucks or cars driving into plaintiff's station were compelled to drive down a steep incline as they entered the lot. The driveway into the plaintiffs' station extended diagonally across the plaintiffs' leasehold from the southeast to the northwest. Thus the front wheel of any truck entering the station would drop down over the incline before the other front wheel did, and cause the load, if any, in the truck to be thrown to one side. The plaintiffs raised their filling station about 12 inches and filled their lot to the new grade of the street. The plaintiffs also made a new driveway which entered their leasehold closer to the south end thereof than had the former driveway. The cost of

causing the plaintiffs' leasehold to be in approximately the same condition with relation to the grade of Eighth street after the change in grade as it was before such change, including a longer driveway than existed before the change, was the sum of $550.53. In the petition the plaintiffs alleged the cost of such repairs and also alleged that the leasehold had been diminished in value by such change in grade to the extent of $2,000. The trial judge viewed the premises. The judgment of the court was for the sum of $433.66. In the petition the plaintiffs also alleged a damage of $100 for additional sidewalks that it was claimed the change in grade necessitated, and a damage of $1,500 from an alleged change in the drainage of rain waters from the premises, as well as an alleged damage of $750 for loss of business during the time their premises were undergoing repair.

No contention seems ever to have been made to the effect that liability did not attach to the defendant in any amount, and we do not concern ourselves with such a contention now. This court has held that a tenant of real estate for a fixed term has such a property right therein as to allow him recovery of damages for an injury to his leasehold that arises from the taking of property for public use. *Gledhill v. State,* 123 Neb. 726, 243 N. W. 909. The appellant contends that the only evidence introduced was relative to cost of restoration to an approximate former condition, and that such is not the measure of damage in this action, when the landlord, who is the owner of the reversionary estate, is not a party to the action. In an action to recover damages to a leasehold estate in real property damaged but not taken by a change in the grade of a street for public use, the measure of damage ordinarily is the amount of the depreciation in the value of the use for the unexpired term brought about by the cause of the damage, but if the cost of restoring such leasehold to its condition before the injury is less than such depreciation, then the cost of such restoration should be taken as the measure of damage. 20 C. J. 741, 751, and cases cited in the footnotes. Evidence

of loss of business was excluded. The attempt to recover the cost of sidewalk was abandoned by plaintiffs. In this case the premises are shown not to have been placed in any better condition with reference to grade than the condition in which they were before the change in grade, aside from the construction of some additional driveway, the reasonable cost of which the trial court may have deducted from the cost of restoration. The cause was tried to a court without the intervention of a jury, and it is not possible from the record to tell what measure of damage was used by the court in computing the damages allowed. The trial judge viewed the premises. Evidence of cost of restoration, terms of the lease, length of time that access to the premises was interrupted and other circumstances bearing upon the question of damages were before him. The evidence is ample to sustain the findings of the trial court, even if the measure of damage contended for by appellant or the rule above stated was used.

Finding no error in the record prejudicial to the rights of the defendant, the judgment of the trial court is

AFFIRMED.