STATE OF NEBRASKA, APPELLANT, SYLVESTER L. MEYERS ET AL., APPELLEES, V. PLATTE VALLEY PUBLIC POWER AND IRRIGATION DISTRICT, APPELLEE.

23 N. W. 2d 300
FILED MAY 31, 1946. No. 32059.

*Walter R. Johnson, Attorney General, Robert A. Nelson,* and *H. Emerson Kokjer,* for appellant.

*Beeler, Crosby & Baskins,* for appellee and cross-appellant.

*Halligan & McGinley,* for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action, school lands, which were under lease, were taken by eminent domain. Trial was had to a jury and awards of damage made to the state and the lessee. The state appeals. The condemnor cross-appeals. We reverse the judgment of the trial court and remand the cause.

The parties to this action are the state; Sylvester L. Meyers, hereinafter referred to as the lessee, and his wife; and the Platte Valley Public Power and Irrigation District. a corporation, hereinafter referred to as the condemnor.

The land involved in this action is a part of the school land of the state under grant from the United States. It consists of 204.90 acres of bottom hay land, and 67.32 acres of river accretion land.

As of January 1, 1934, this land was leased to the lessee by written instrument as follows:

"Know All Men by These Presents: That I, Harry P. Conklin Commissioner of Public Lands and Buildings, in pursuance and by virtue of the power and authority vested in me by the laws of the State of Nebraska, and in consideration of the rents to be paid and conditions to be complied with by Sylvester Leroy Myers hereinafter contained, do lease and let unto the said Sylvester Leroy Myers all that certain tract or parcel of land, situated in the County

of Keith and State of Nebraska, and described as follows, to-wit: Gov't. Lots 2 & 3—NE¼SW¼—S½SW¼ of Section No. 8, Township No. 13 Range No. 36 and appraised at Six hundred fourteen & 70/100 Dollars, upon the terms and conditions only, however, that the said lessee shall and will promptly pay semi-annually in advance, on the first day of January and July in each year, to the County Treasurer of said County of Keith for the use of said lands, the full annual rate of six per cent upon the aforesaid appraised value of said lands, and that he shall, in like manner pay semi-annually, in advance, the annual rate of six per cent upon the appraised value of said lands, which may or shall hereafter be made; that he will not cut any timber, commit any waste or spoil in or upon said lands; that the Board of Educational Lands and Funds may, when they deem it to the best interests of the state, cause said lands to be reappraised according to the law in force at the time such reappraisement is made, and that the valuation made by the said Board -shall be the basis of the rental after such reappraisement, and that at the expiration of twenty-five years from and after the first day of January next ensuing after the date of this lease, or sooner, with the consent of the Board of Educational Lands and Funds, Commissioner he will peaceably and quietly leave, surrender, and yield up all and singular the said lands and premises. And that in case of any default on the part of the said lessee to pay the rental or any part thereof, as above stated, for the period of six months from the time it becomes due and payable, this lease may be forfeited and fully set aside, as provided by law, and the land revert to the State the same as though it had never been leased, and be subject to lease or sale to other parties. No assignment of this lease shall be valid unless the same be entered of record in the office of Commissioner of Public Lands and Buildings, and all the rental due the State shall have been paid.

"By order of the Board of Educational Lands and Funds.

"In Witness Whereof, I hereunto set my hand and affix

my official seal, at the City of Lincoln, this 1st day of January A. D. 1934.

> "All coal, oil, salt, mineral and other natural resources are reserved by the state as provided by law.

> > "Harry P. Conklin
> > "Commissioner of Public Lands
> > and Buildings.

"(Recorded in Book 20, Page 223-1)

> > "By J. H. Wehn Deputy"

The lessee entered into possession and has paid the stipulated rentals.

At the trial all parties asked the witnesses to fix the value of the land as of April 15, 1945. We shall refer herein to values with reference to that date, unless otherwise indicated. The rental being paid at that date was $186.30 per annum. All the land was taken under the condemnation proceeding. Consequential damage to other land is not involved. Proceedings in condemnation were first had in the county court of Keith County. The state and the condemnor appealed to the district court for Keith County where issues were made and trial had. The principal issue tried was the value of the land taken and the value of the interest the state and the lessee had in the premises.

The state contended that it was entitled to recover the full value of the fee, less the value of certain improvements to be mentioned later herein. The lessee contended that he was entitled to recover the value of his lease based upon the difference between the present value of the land and the appraised value fixed by the state; and that he had the right to a renewal of the lease for a twenty-five year period at the expiration of the present lease, and in effect had a lease in perpetuity, conditioned on paying the required rental to the state. The condemnor's contention was that it was required to pay the value of the fee, but no more.

The evidence amply shows that the appraised value as

fixed by the state, as a basis for determining the rent to be paid, was much less than the present actual market value of the premises.

Over objection of the state, the trial court admitted evidence of value based on the premise that the rental exacted by the state determined the value of the state's interest; that whatever value there was above the state's interest, so determined, was the property of the lessee for the unexpired portion of the term and for a 25-year renewal term; and permitted witnesses to give their estimates of the value of the state's interest and the interest of the lessee, in percentages of the whole based on the above premise.

The trial court instructed the jury that the state was entitled to recover the fair market value of the land taken, less the fair market value of the leasehold; that the lessee was entitled to recover the fair market value of the leasehold; and that in determining those values the jury should take into consideration the evidence adduced at the trial. The jury further was instructed that the lessee had the right at the expiration of his lease to apply for and receive a new lease without a competitive bid.

The jury by its verdict fixed the amount of the state's recovery at $6,547.50, and that of the lessee at $8,002.50. By calculation then it fixed the total value to be paid by the condemnor at $14,550, and fixed the interest of the state at 45% and that of the lessee at 55% of the whole. The total value as fixed by the jury is within the range of values fixed by the witnesses. This may be contrasted with the appraised value of $3,105 which the state fixed as the basis upon which to determine the rental charge.

On appeal the state assigns many errors, including the reception of evidence, instructions given and refused, and the amount of the verdict allocating damages to the lessee and to the state.

The state presents here two questions. What is the measure of damages to the state and the measure of damages to the lessee? The state, and the condemnor by cross-appeal, present the additional question as to whether or not

the lessee's claimed preference right to a renewal of his lease is a proper element to be considered in determining the lessee's damage.

The school lands of this state are held in trust by the state under a contractual and constitutional obligation to refrain from disposition or alienation of the use of this property, except as allowed by the Enabling Act and the Constitution. By the provisions of section 1, article VII, of the Constitution, the Board of Commissioners there named, under the direction of the Legislature, has the power to lease said lands. They will be herein referred to as the board. Legislative direction, as to the terms under which the school lands shall be leased, is subject to and limited by the obligation to preserve the trust property inviolate. Likewise, the action of the board in leasing the school lands is subject to and limited by the terms imposed by the Legislature. Their power to lease exists only insofar as it is directed or permitted by the Legislature. State v. Central Nebraska Public Power and Irrigation District, 143 Neb. 153, 8 N. W. 2d 841. Anyone dealing with the school lands must be held to do so with knowledge of and subject to the trust obligations of the state and the legislative grant of power to the board as to the terms and conditions of the lease. The law enters into and becomes a part of the contract. Stanser v. Cather, 85 Neb. 305, 313, 123 N. W. 316, 124 N. W. 102.

A lease made subject to the above conditions constitutes a contract between the state and the lessee, and is personal property. Mulloy v. Kyle, 26 Neb. 313, 41 N. W. 1117; State ex rel. Brown v. McPeak, 31 Neb. 139, 47 N. W. 691; Luse v. Rankin, 57 Neb. 632, 78 N. W. 258; Nelson v. Radcliffe, 110 Neb. 54, 192 N. W. 958; State ex rel. O'Brien v. Board of Commissioners, 116 Neb. 261, 216 N. W. 818; § 72-234, R. S. 1943. The property rights of the lessee therein are protected from invasion by the constitutional provision that "The property of no person shall be taken or damaged for public use without just compensation therefore." Const., art. I, § 21. Beste v. Cedar

County, 87 Neb. 689, 128 N. W. 29.

By the provisions of sections 72-204 and 72-205, R. S. 1943, the board is authorized to appraise and reappraise school lands when it deems it to the best interest of the state, and to raise or lower the valuation of such lands as it may deem advisable in the public interest, the lessees of such lands, or other parties affected thereby. All unsold lands are subject to lease at an annual rental of six percent of the appraised value. §72-232, R. S. 1943. Each lease shall contain a covenant that whenever the board deems it for the best interests of the state, it may reappraise said lands, and that the lessee will pay an annual rental of six percent upon the appaised value thereof. § 72-234, R. S. 1943. The lease in the instant case provided that the board might, when it deemed it to be to the best interest of the state, cause the land to be reappraised "according to the law in force at the time such reappraisement is made"; that the valuation made by the board should be the "basis of the rental" after such reappraisement; and that the lessee would pay rent upon the value of the lands which "may or shall hereafter be made." By the provisions of section 72-205, R. S. 1943, the board in determining the value of school lands is required to consider the sale price of other lands in the county and the rental value of other lands similarly situated. These provisions were placed in the law in 1935. See Laws 1935, ch. 163, § 3. p. 595. As early as 1899, the Legislature fixed the "true value" as the base of the appraisal. Laws 1899, ch. 69, § 4, p. 302.

It is clear from an analysis of these statutory provisions that the administrative determination of the value of the school lands by appraisement is for the purpose of securing a value as a basis for fixing the annual rent. It is obvious that the legislative intent was that the appraised value should be at all times the fair market value of the leased premises, and that the state should receive a six percent return upon that value. It likewise is obvious that the appraised value of the land involved in this action is far be-

low its fair market value as reflected by all the evidence. However, the administrative determination of value for rent purposes does not fix the value which the state must receive for the land when it is taken in eminent domain proceedings. The state must receive the fair market value of the leased premises at the time of the taking, less certain reservations to be hereinafter noted. That value belongs to the state, not to the lessee. The state is without power to alienate these lands without receiving their full value; it cannot reduce that value nor alienate it in part by lease, and these lands cannot be taken from the state by judicial process unless that value is paid to the state. Obviously the board, under the leasing provision of the statute, is without authority to sell, directly or in effect, a part of the fee. The provisions for reappraisement and the payment of variable rents based on the reappraised value shows clearly a legislative intent, which the lessee recognized by his lease contract, that the increased value of the premises should at all times belong to the state. For the state to receive less than that fair market value would be to invade the trust property and violate the obligation of the trust that binds it. The trial court erred in receiving evidence and in permitting the jury to fix the value of the state's recovery herein, based on the premise that the appraised value and the rents reserved to the state fixed the value of the state's interest in the land.

The land which the state leases constituted the trust property. The Legislature clearly intended that the lessee of school lands should be encouraged to use and improve the lands by good husbandry. The Legislature provided that if, at the time of the expiration of a lease, the highest bid received was by a person other than the lessee, then the value of the improvements on the land should be appraised, paid for by the new lessee, and in turn paid to the former lessee, less the amount due the state from the former lessee. These improvements so reserved to the lessee include "* * * all buildings, fencing, wells, windmills, pumps, tanks, irrigation improvements and also cost for labor expended

in breaking sod on said tract of land and reducing same to cultivation and for alfalfa or other crops growing upon said lands." §72-218, Comp. St. 1929. With minor changes in language, these provisions are now in section 72-240, R. S. 1943. The Legislature likewise provided that in the event of a forfeiture of the lease and a reverter of the lands to the state "movable improvements" on the land should be sold and the proceeds received should inure to the holder of the delinquent contract after certain payments therefrom had been made to the state and to irrigation districts. §72-238, R. S. 1943. The right of a lessee to remove "all improvements he may have erected on the land" is recognized also in section 72-254, R. S. 1943, regarding the land to which reference is there made. By these provisions the Legislature recognized that certain improvements placed upon the land by the lessee remained the property of the lessee and do not become a part of the trust property of the state. There is not involved in the instant case any claim of the lessee for cost of labor expended in breaking sod and in reducing the land to cultivation, nor for alfalfa or other growing crops thereon, so any question regarding the right of the lessee to recover for such "improvements" in the action is not determined. There is evidence indicating that the lessee has placed some fencing on the property. The lessee is entitled to recover the value of that property and in determining the value of the state's interest, that property should be excluded.

The lessee contends that whatever possession and use value there is in the premises, above the value fixed by the appraisement of the state, and above the rent required by the state, is his for the period of the unexpired term of the lease, and for the period of the extension of the lease, and that he is entitled to recover that value.

We have held that a tenant for a term has a property right which is protected by section 21, article I, of the Constitution, Gledhill v. State, 123 Neb. 726, 243 N. W. 909; and that he may recover damages arising from the taking of such property for public use. Fair-Way Oil Co. v. State,

132 Neb. 707, 272 N. W. 917. It was recognized in Briggs v. Neville, 103 Neb. 1, 170 N. W. 188, that the lessee of a school land lease was entitled to compensation for injury caused to his leasehold estate. The question is not the right of the lessee to recover damages, but rather the measure of his damages.

The general rule is that "If a leasehold interest is taken, or injured, the lessee is entitled to a sum which will restore the money loss consequent to the taking or injury. This consists generally of the fair market value of the leasehold or unexpired term of the lease, and is said to be the difference between the rental value of the remainder of the term and the rent reserved in the lease." 29 C. J. S., Eminent Domain, § 143 b, p. 988.

The difficulty in the lessee's position lies in the fact that this is not an ordinary lease for years with a fixed rent. Here the lessee is required to pay a variable rent to be determined by the appraised value of the premises, which appraisal may be changed from time to time. As has been pointed out, that appraised value was intended to be the fair market value of the leased premises. The fact that the state has failed to appraise the land for its full value and accordingly has failed to exact the payment of six percent interest based on that full value, does not give the lessee a property right that he would not have had had there been a substantial compliance with the statutes in the determination of the value of the leased premises.

Under these conditions there can be no difference between the rental value of the remainder of the term and the rent reserved in the lease, unless it be shown that the value of the use based upon the fair market value of the land is more than the six percent required by the statute as the rental value of the use. However, there is some evidence here that the value of the use based upon the fair market value of the land is more than the six percent required by the statute as the rental value of the use. If that fact were established, then we are of the opinion that this value of the use belongs to the lessee under his lease, and that he is en-

titled to recover its fair market value, if any, for the remainder of the term. Where the rent reserved equals or exceeds the rental value, the lessee has suffered no loss and cannot recover. 29 C. J. S., Eminent Domain, § 143, note 71(3), p. 989.

The question comes as to the length of the term. The lease in this instance is dated January 1, 1934. The lease by its terms runs for 25 years and contains a covenant that the lessee will surrender the premises at the end of the term. This is in accord with the provisions of the statute. §72-234, R. S. 1943. But the lessee relies upon the provision of section 72-240, R. S. 1943, that "All lessees shall have the right, at the expiration of their contracts, to apply for and receive a new lease without a competitive bid." The trial court in its instructions to the jury set out this provision. From it the jury was permitted to infer that the lessee had the right to an additional term, and that the jury should take that into consideration in fixing the amount of the lessee's recovery. The lessee pleaded that he not only had the right to the additional term but in fact a lease in perpetuity. The trial court instructed the jury that the lessee claimed a right of renewal of its lease. The provisions of section 72-240, R. S. 1943, are substantially the same as those of section 72-218, Comp. St. 1929, which act was in force when the lease here involved was executed. This section must be construed in the light of its history and in connection with the other provisions in the section and provisions elsewhere in the act.

In 1899, the Legislature provided that holders of lease contracts executed prior to July 9, 1897, were given the right, at the expiration thereof, to make application for and receive new lease contracts at the same rate of rental; and that they would not be required to compete for contracts. Laws 1899, ch. 69, § 16, p. 308; § 5862, Rev. St. 1913. At the same time the Legislature provided for a public offering, preceded by published notice, of all educational lands that were vacant and subject to lease. Laws 1899, ch. 69, § 15, p. 306; §5861, Rev. St. 1913. This provision

has been continued in the act. See §72-217, Comp. St. 1929, and §72-233, R. S. 1943.

In 1919, section 5862, Rev. St. 1913, was amended by adding thereto a provision concerning the renewal of leases made subsequent to 1897 and providing that such lessees should have "the right, at the expiration of their contracts, to apply for new contracts"; and that if the bid of the lessee was equal to that bid by any other person, the lessee's bid should be accepted, but that if a higher bid were made by some other person, then the higher bid controlled. Laws 1919, ch. 149, § 1, p. 333. In 1923, this act was amended to provide, so far as important here, that "All subsequent lessees, shall have the right, at the expiration of their contracts, to apply for new lease and receive a new lease without a competitive bid," and contained the provisions with reference to a higher bid by a person other than the lessee. Laws 1923, ch. 54, § 1, p. 175. Throughout these amendments reference was made to the preceding section, which as amended is now section 72-233, R. S. 1943, being the provision with reference to public offering and competitive bidding. In section 72-240, R. S. 1943, the provision with reference to leases executed prior to 1897 was omitted.

We think it clear from analysis of the act and its history that the "without a competitive bid" waives the requirement of a public offering based on published notice. Clearly the section does not give the lessee an absolute right to a new lease. He is entitled to that lease provided some other person does not bid more for a lease than does the lessee, and in the event of a higher bid by a third person, the lessee is not entitled to a lease for a new term. The reference in the earlier sections of the statute to the provisions, as now amended, in section 72-233, R. S. 1943, sustain this conclusion, as also do the provisions of section 72-234, R. S. 1943 (contained in this lease), that the lessee shall surrender the premises at the end of the 25-year term. The lessee then has merely a right to a lease, provided no other person offers a higher bid and return to the

state.

The question then is, is this right one that should be considered in determining the damages suffered by the lessee? In our opinion it is not. The securing of a new lease does not depend alone upon the action of the lessee and the state. It depends upon whether or not some third person, at the expiration of the lease, makes a higher bid than that of the lessee. That is purely speculative. The right is not such a one that it should be considered in determining the value of the leasehold. See 18 Am. Jur., Eminent Domain, § 232, p. 867; 29 C. J. S., Eminent Domain, § 143, p. 990. Accordingly, the trial court erred in admitting evidence and in instructing the jury with reference to a claimed right of the lessee to renew the lease.

The condemnor brings this action under the provisions of chapter 160, Laws 1943, p. 573, now sections 72-212 to 72-226, incl., R. S. 1943. The Attorney General advises us in his brief that the constitutionality of the act has been questioned and argues that it is constitutional. We are unable to find where that question has been raised. All parties proceed here, as they did in the trial court, on the premise that the act is valid. The constitutional question not being presented, it accordingly is not decided.

Section 72-213, R. S. 1943, provides that "Educational lands belonging to the state may be acquired through the exercise of eminent domain proceedings for the special purposes mentioned in sections 72-214 to 72-226." Section 72-223, R. S. 1943, provides: "The condemnation proceedings provided in sections 72-213 to 72-222 shall not operate to deprive the State of Nebraska of any mineral rights in the lands taken for the special purposes authorized by said sections, and, except as to land acquired by the United States of America, when any such land shall cease to be used for the special purpose for which it was acquired, it shall revert to the State of Nebraska as educational land." Section 72-225, R. S. 1943, provides: "If the land to be taken is held under lease contract, a finding shall be made as to the interest of the owner in such lease contract, and such value.

shall be separately assessed. If the land is held under contract of sale, the interest of the owner of such sale contract shall be separately assessed."

It follows from the provisions of section 72-223, R. S. 1943, that the condemnor cannot acquire as a result of this proceeding any mineral rights in the lands taken. Accordingly, in determining the fair market value of the land, the value of the mineral rights in the land, if shown to have any value, is to be excluded.

Likewise, a reverter is reserved to the state in the event the land shall cease to be used for the special purpose for which it was acquired. It is evident that the condemnor here contemplates an exclusive use of the land and that this use will be perpetual, although there exists a possibility of a reverter to the state. Where the possibility of abandonment by nonuser is so remote that there would be no substantial determinative value in the reverter, it is not to be taken into consideration in determining the measure of the damages sustained. 18 Am. Jur., Eminent Domain, § 251, p. 889; 29 C. J. S., Eminent Domain, § 149, p. 1005; Orgel, Valuation under Eminent Domain, § 104, p. 354. However, if it should be established that the reverter has a substantial determinative value, then that value should be excluded in determining the amount of the state's recovery. Orgel, Valuation under Eminent Domain, § 104, p. 355.

Summarizing. The state's interest for which the condemnor must make compensation in this action is the fair market value of the leased premises taken, less the value of the mineral rights, if any, and less the value of the reverter, if any. The lessee's interest herein for which the condemnor must make compensation is the value of the improvements, if any, which he has placed upon the lands, plus the value of the use, if any, which is over and above six percent per annum of the fair market value of the leased premises.

The condemnor contends that the total damage that it is required to pay cannot exceed the actual market value of

the lands taken, plus consequential damages to lands not taken, and damages to growing crops of the lessee. The last two items are not involved in the instant case. It, accordingly, argues that the fair market value of the land taken should first be determined, the market value of the leasehold determined and deducted from the total value, and that the remainder constitutes the damages that should be awarded the state.

"The rule is generally recognized (though not invariably followed) that, where there are several interests or estates in a parcel of real estate taken by eminent domain, a proper method of fixing the value of, or damage to, each interest or estate, is to determine the value of, or damage to, the property as a whole, and then to apportion the same among the several owners according to their respective interests or estates, rather than to take each interest or estate as a unit and fix the value thereof, or damage thereto, separately. Even where separate petitions are filed and the damages are separately assessed, the compensation awarded will not exceed the value of the entire parcel taken. But it sometimes happens that the land as a whole is not damaged at all, though the owner of one interest suffers substantial injury, or the damage to the various interests when added together exceeds the value of the property as a whole. In such cases each is entitled to be compensated in damages for the amount of his interest taken, and if it be true that the values of the two interests are more than the land would be worth if owned by one person, the necessities of the case require an apparent exception to the general rule announced above as to what the condemning party must pay. For example, when a. piece of property which is subject to an ordinary lease for a short term is taken, it may happen that although the owner of the fee is allowed full value for the property, the tenant must also be paid a large and substantial amount in addition, by reason of the value of his lease." 18 Am. Jur., Eminent Domain, § 239, p. 872.

The question then presented is this: Shall the total com-

pensation payable by the condemnor be measured by the value of a fee simple in the property, or shall it be based on the sum of the value of the separate interests? This problem and the difficulties of applying any one rule to the variable situations arising in these cases are pointed out in Orgel on Valuation under Eminent Domain, chapter IX, beginning on page 353. See, also, 1 Nichols, Eminent Domain, 2d ed., § 231, p. 707; Annotation, 69 A. L. R. 1263. The cases are cited in the texts. It appears from an examination of the cases that courts have held that the total amount to be paid by the condemnor may be less than the value of the separate interests, and generally that the sum of the separate values of the divided interests may not exceed the value of the whole, and that in exceptional circumstances the damages to the various interests, when added together, may exceed the value of the property as an unencumbered whole.

Generally the courts have approached the problem from the standpoint of determining the value of that which the owner has lost rather than that which the condemnor has gained. In Boston Chamber of Commerce v. Boston, 217 U. S. 189, 54 L. Ed. 725, 30 S. Ct. 459, the Supreme Court of the United States said: "But the Constitution does not require a disregard of the mode of ownership,—of the state of the title. It does not require a parcel of land to be valued as an unencumbered whole when it is not held as an unencumbered whole. It merely requires that an owner of property taken should be paid for what is taken from him. It deals with persons, not with tracts of land. And the question is what has the owner lost, not what has the taker gained. We regard it as entirely plain that the petitioners were not entitled as matter of law to have the damages estimated as if the land was the sole property of one owner, * * * ." That court has more recently said: "It is * * * the owner's loss, not the taker's gain, which is the measure of compensation for the property taken * * * ." United States ex rel. T. V. A. v. Powelson, 319 U. S. 266, 87 L. Ed. 1390, 63 S. Ct.

1047.   In the Boston case the market value of the undivided fee was much greater than the value of the separate interests.

Baltimore City v. Latrobe, 101 Md. 621, 61 A. 203, dealt with an appeal in a condemnation case where it was apparent that the value of the two interests taken could be more than the value of the fee if it were owned by one person.   The Constitution of Maryland provided that private property could not be taken for public use without just compensation.   The court there stated that as a general rule the condemnor ought not to be required to pay for the two interests more than what the property was worth if owned by one person, and stated: " * * * each is entitled under the Constitution to be compensated in damages for the amount of his interest taken, and if it be true that the values of the two interests are more than what the lots would be worth, if owned by one person, the necessities of the case require an apparent exception to the general rule announced above, as to what the condemning party must pay."   This case is referred to generally in the texts and in a number of decisions.   For instance, the Supreme Court of Missouri in State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S. W. 2d 80, 69 A. L. R. 1256, cited it and said this: "There may be instances in which, owing to exceptional circumstances, the damages to the various interests when added together exceed the value of the property as a whole; in such case the particular interests should of course be separately appraised, because the owner of each is entitled to be compensated in damages for the amount of his interest taken."

As has been stated, our Constitution provides that the property of no person shall be taken or damaged for public use without just compensation.   The reasoning of the courts in the cases above quoted is applicable in this state under our Constitution.   The measure of compensation to each owner must be that which he has lost.   It seems to us that those courts which have held that the sum of the separate values of the divided interests may be less than the

value of the unencumbered whole have followed this principle. It also seems to us that those courts which have held that the sum of the separate values of the divided interests may not exceed the value of the unencumbered whole have at that point abandoned the rule that the measure is what has the owner lost, and applied the rule that the measure is what has the taker gained.

The rule requiring just compensation to each owner for that which is taken must be applied in all instances under our Constitution. " * * * any rule that may be laid down must itself be measured by the rule given in the Constitution, and any rule that so limits the damages in such case as that the result will be in fact less than just compensation for the injury suffered, falls short of the constitutional measure." City of St. Louis v. Brown, 155 Mo. 545, 56 S. W. 298. It seems to us also that those courts which have undertaken to limit the total award to the value of the unencumbered whole have overlooked the factual situation that exists in many of these cases where there is a personal property right taken or damaged, in addition to the real property taken or damaged. Obviously, the value of the real property should not be the limit of the recovery in such cases.

"According to some authorities, where two or more persons have distinct interests or estates in any particular parcel of land, the value of each interest should be separately assessed, and this may be done either by first ascertaining the damage to the fee as if it were owned by one person, and unincumbered, and then apportioning that amount among all the estates and interests, or in the first instance by appraising the value of each separate interest and thus ascertaining the entire value." 29 C. J. S., Eminent Domain, § 279, p. 1280.

It is recognized in the texts and many of the cases that as a practical proposition the juries will follow the latter method. But be that as it may, that is the procedure required by the statute under which the condemnor is proceeding here. Section 72-225, R. S. 1943, provides: "If the

land to be taken is held under lease contract, a finding shall be made as to the interest of the owner in such lease contract, and such value shall be separately assessed." This, requires that there shall also be a finding as to the interest of the state and that it be also separately assessed. The total of the two then constitutes the amount of the award which the condemnor is required to pay.

For the reasons given herein, the judgment of the trial court is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.