PROPST v. BOARD OF EDUCATIONAL
LANDS AND FUNDS OF
NEBRASKA et al.

Civ. No. 39–51.

United States District Court
D. Nebraska, Lincoln Division.

Dec. 4, 1951.

1. No opinion for publication.

458

Bruce K. Lyon, Grant, Neb., Henry W. Curtis, Imperial, Neb., and Wm. P. Kelley and James J. Fitzgerald (Matthews, Kelley, Fitzgerald and Delehant), Omaha, Neb., for leaseholders Propst et al.

Clarence S. Beck, Atty. Gen. of Nebraska, and Robert Nelson, Asst. Atty. Gen., for Board of Educational Lands and Funds.

Before WOODROUGH and JOHNSEN, Circuit Judges, and DONOHOE, District Judge.

JOHNSEN, Circuit Judge.

An injunction is sought from a three-judge statutory court, to prevent the Board of Educational Lands and Funds of the State of Nebraska from treating as void some renewal leases on state school lands heretofore issued by the Board to plaintiff, to interveners and to others alleged to be in the same class; from undertaking to offer for the term covered thereby new leases upon such lands at public auction; and from assuming to approve any bids so previously received and executing leases to any purchasers on the basis of such sale proceedings.

The alleged class, which plaintiff and interveners claim to represent, consists of approximately 2300 persons, all residents of the State, who were holders of previous leases upon separate tracts of school lands, which had expired subsequent to the effective date of Chapter 235, Neb. Laws of 1947 (or of Chapter 212, Laws of 1949, making some amendments and additions thereto, not here material) and which had been the subject of renewals issued by the Board under the provisions of that statute.

The previous expired leases had been for 25-year terms. Prior to the enactment of Chapter 235, Laws of 1947, the statute applicable to the renewal of such expiring leases, Neb.R.S.1943, § 72–240, had provided that "All lessees shall have the right, at the expiration of their contracts, to apply for and receive a new lease without a competitive bid." Another provision of the section, however, permitted third parties, if they so desired, to present bids to the Board on any such expiring leaseholds. Reading these provisions together and in the light of the history of the statute, the Nebraska Supreme Court, State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 301, 166 A.L.R. 1196, had declared that the statute empowered the Board to make renewals of school-land leases without "the requirement of a public offering based on published notice"; that the Board, however, was required to receive any bids which might be presented to it in such a situation by third parties; that the holder of a previous lease thus did not have an absolute right to a renewal of his lease but a preference only; that "if the bid of the lessee was equal to that bid by any other person, the lessee's bid should be accepted, but that if a higher bid were made by some other person, then the higher bid controlled"; and that, in substance therefore, "The lessee then has merely a right to a lease, provided no other person offers a higher bid". State v. Platte Valley Public Power & Irrigation Dist., 147 Neb. 289, 23 N.W.2d 300, 309, 166 A.L.R. 1196.

By the 1947 Act referred to, the Legislature wiped out the provision permitting third parties to present bids to the Board on lease expirations, where the holder sought renewal, and in effect granted to

existing leaseholders an automatic right of renewal for a twelve-year term, subject only to the condition of their having co-operated with the Board in the proper care of the premises during their preceding term, having properly utilized the land for the purposes contemplated by the lease, having "followed the standards of soil conservation and good husbandry", and having faithfully performed all the previous lease covenants, including the payment of rent. See R.S.Supp.1949, § 72–240.01.

Following the enactment of this statute, the Board refused to receive any bids from third parties, where the existing leaseholder was qualified and made application for renewal of his lease. Bids were attempted to be presented by third parties upon some of the 2300 tracts that are alleged to be here involved, and on other of such tracts inquiries were made of the Board as to whether they were open to the making of bids. The record does not establish the number of these bids and inquiries but it does suggest that they were substantial. Many of the 2300 tracts, however, including that covered by the renewal lease of plaintiff, were not made the subject of an express bid by a third party or of any specific inquiry as to their openness.

This automatic renewing of leases for twelve-year terms under the 1947 Act went on for about three years, when it was challenged in the Nebraska courts by a third party who had presented to the Board a bonus bid for a lease upon a tract of land, the previous term on which was then expiring, and whose bid the Board refused to receive. The Nebraska Supreme Court held in that case that the 1947 Act of the Legislature, in giving previous leaseholders a special benefit in the school lands in the form of an automatic renewal right, without regard to how much or whether others were willing to pay more, was void as being violative of the State's Constitution. State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N.W.2d 520; Id., 154 Neb. 596, 47 N.W.2d 520. This holding was followed by other declarations to the same effect in Todd v. Board of Educational Lands and Funds, 154 Neb. 606, 48 N.W.2d 706; Watson Hay Co. v. Board of Educational Lands and Funds, 154 Neb. 613, 48 N.W.2d 711; and Hanna v. Board of Educational Lands and Funds, 154 Neb. 619, 48 N.W.2d 715.

The effect of these decisions, and of the Ebke case in particular, was to leave the Board with the indicated obligation, in the situation which the invalid statute had produced, of putting the lands up for re-leasing at public auction. In recognition of its trust responsibility so pointed out, and basing its action entirely, as its minutes show, upon what the Supreme Court had held, the Board formally declared that all of the renewal leases issued by it under the 1947 Act were void, made vacation of all the orders under which these leases had been executed, and gave notice to the leaseholders that the lands would be offered for re-leasing at public auction.

This public-auction program has been carried into effect as fast as it has been possible for the Board to proceed. Sales of leases upon some lands, including the tracts covered by the renewal leases of the two interveners, have already been conducted. Other tracts are in process of advertising, and the remainder, including that held by plaintiff, will be similarly dealt with as soon as the Board, under the limitations of its man-power and pecuniary facilities, is able to reach them.

In the sales so far held, the previous leaseholders have in many instances been the highest bidders—their bids having been made, of course, under purported legal protest. In other instances, third parties have outbid the previous holders. On 138 tracts thus auctioned during the first month of the Board's re-leasing operations, it is shown that bonus bids were made of $503,303, above the amount which would have been received in rental and in revenue for the school system of the State from the renewal leases issued under the 1947 Act.

 Federal jurisdiction is sought to be invoked against the Board's actions, on the ground that the contract-impairment clause of Art. I, sec. 10, of the Federal

Constitution, and the due-process and equal-protection clauses of the Fourteenth Amendment, are being violated.

It must be kept in mind that Art. I, sec. 10 of the Constitution is a prohibition only against the impairing of contract obligation by legislation. Such impairment as may be produced by judicial decision alone is not within its ban. Tidal Oil Co. v. Flanagan, 263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 382; Fleming v. Fleming, 264 U.S. 29, 44 S.Ct. 246, 68 L.Ed. 547; Stockholders of People's Banking Co. v. Sterling, 300 U.S. 175, 57 S.Ct. 386, 81 L.Ed. 586; Morton v. Dardanelle Special School District No. 15, 8 Cir., 121 F.2d 423, 424; 12 Am.Jur. 26 § 398. See also 57 Harv.L.R. 582.

Here it is, of course, not the Legislature which has attempted to affect the rights which plaintiff and interveners contend have become vested in them by their renewal leases. To the contrary, what the Legislature has done is itself the basis of their claimed rights. Equally, it is not any exercise of legislative power and function by an administrative board or agency which has given the renewal leases their status of illegality under state law. That status derives not from the Board's declaration of invalidity and vacating of its orders for issuance of the leases but from the stamp of nullity placed upon the 1947 Act, and so upon the things which it granted, by the pronouncement of the Supreme Court in the Ebke case. The Board's declaration and vacating of orders, as its minutes show, did not purport to represent action taken by it on the basis of any power which it claimed to possess to revoke or disrupt leases but was simply a formal recognition of the effect which the Ebke case had had and an attempt to clear from its records the legal debris which that decision had left.

When the 1947 Act was declared unconstitutional by the Court, the alleged rights of plaintiff and interveners granted by, applied for and accepted by them under the Act as automatically fell as they had been given. Under Nebraska law, an unconsti-

tutional statute is an utter nullity, is void from the date of its enactment, and is incapable of creating any rights. See Finders v. Bodle, 58 Neb. 57, 78 N.W. 480; Central National Bank of Lincoln v. Sutherland, 113 Neb. 126, 202 N.W. 428.

Since rights purporting to be granted by such a statute are not recognized by the law of that State as ever having had an existence, they cannot, of course, be the subject of any impairment on the basis of state constitutional concept. As plaintiff and interveners contend, that concept, however, is not necessarily controlling on a question of impairment in relation to the Federal Constitution. But whether or not the alleged rights here would be capable in a proper situation of being regarded as of sufficient reality and substance to entitle them, notwithstanding state concept, to recognition and protection against impairment on the basis of federal constitutional appraisal does not matter here. Such a contract appraisal is only able to be made in a situation where the Constitution permits the contract-impairment clause to be invoked. And, as we have pointed out, under the authorities previously cited, alleged contract rights are not subject to scrutiny or testing by a federal court in relation to the question of their impairment as obligations, except where some legislative interposition has occurred against them. In the present situation, as we have said, it is the judicial finger and not the legislative hand by which plaintiff's and interveners' leases have been legally touched. No jurisdiction therefore exists in a federal court to make any examination or evaluation of their alleged rights as a question of impairment of contract obligation.

Some attempt is made to argue that the Ebke case does not mean that all the renewal leases issued under the 1947 Act are ipso facto invalid but only those in situations where a bonus bid was actually offered to the Board by a third party. We are unable so to read the Court's opinion. Plainly, it was declared that it was unconstitutional for the Legislature to undertake to give the previous leaseholders a renewal

right which prevented the Board from receiving bids from third parties. This the 1947 Act specifically did. Plaintiff's and interveners' leases, as well as those of all other parties whom they can properly claim to represent, were admittedly applied for and accepted on that basis. In the legal muddle which has resulted, obviously no one can tell what bids from third parties would otherwise have been received, nor is there any way under the statutes to clear the legal atmosphere and to do justice to the school system and to interested parties except to place the lands up for leasing at public auction, as the Supreme Court, on rehearing, directed be done in the Ebke case.

Whether the Supreme Court's mandate of public auction was intended to apply generally to all expirations of leaseholds thereafter, and so to depart from the procedure given recognition in the Platte Valley Public Power & Irrigation District case, supra, or whether it is merely one of exigency for the situation created by the 1947 Act, is of no moment here. Whatever was the intention and whatever might be the effect in relation to such renewal rights as plaintiff and interveners might have had under the statutes and the Platte Valley Public Power & Irrigation District decision, prior to the 1947 Act, the results in either event are products of judicial decision alone and therefore are not the kind of impairment, if such they can at all be called, which is within the protection of Art. I, sec. 10, of the Federal Constitution.

The other questions which have been presented do not appear to be matters on which technically the parties are entitled to the consideration of a three-judge statutory court. They have been submitted to us, however, without any objection that they more properly are single-judge considerations, and we shall therefore in the interest of expedition make disposal of them.

■ It is contended that the due process requirement of the Fourteenth Amendment has been violated by the actions of the Board in declaring the renewal leases void and in vacating its orders of issuance, without previous notice to plaintiff and interveners and an opportunity to them to be heard. But, as we have emphasized, it was the decision of the Supreme Court in the Ebke case which gave to the renewal leases their status of legal nullity and not the Board's echoing and reflecting of this lifelessness upon its records by its declaration and its vacating of the previous issuance orders. Notice by the Board to plaintiff and interveners and the allowing of opportunity to them to be heard, before the formality of declaration and vacating of issuance orders was engaged in by the Board, could in no way have affected the status of legal nullity which the Ebke case had created or have removed from plaintiff's and interveners' renewal leases the stamp of illegality which had been thus placed upon them. What the Board did could not violate rights unless rights existed. And except as rights existed and were touched, no question of due process could possibly be involved in relation to the Board's actions. Within the argument here made, therefore, no violation of due process under the Fourteenth Amendment has occurred.

■ The further contention has been made that plaintiff and interveners are being denied equal protection of the law, in that they are being subjected to the requirement of public auction, whereas some 3,000 renewal leases on other school lands which had been previously issued without auction proceedings, under the statutes in force prior to the 1947 Act and within the recognition made by the Platte Valley Public Power & Irrigation District case, are admittedly being allowed to stand. It has been stipulated that there is no intention to subject these previous renewal leases, made for 25-year terms under the old statutes, to re-leasing proceedings through public auction, as being void.

But the distinction between the situation of persons holding renewal leases under the statutes in force prior to 1947, where the opportunity had been afforded for the presenting of bids by third parties, and of

those who applied for and accepted renewal leases under the 1947 Act, where the making of any bids by third parties was foreclosed, is on its face sufficient, without regard to any other consideration, to allow the State to treat them as different classes, if it chooses to do so, in so far as any violation of the equal protection clause of the Fourteenth Amendment is concerned. It was because the 1947 Act had closed the door to the receiving of outside bids in any manner whatsoever that the Supreme Court of Nebraska struck it down, that those who had accepted renewals on the basis of that statute therefore were left without any lease contracts under it, and that public auction has been made necessary in plaintiff and interveners' situation.

Other minor contentions have been made which are wholly without any basis, as present claims of federal constitutional violation at least, and so afford no ground for any invocation of federal court jurisdiction in this proceeding.

An attempt has been made by plaintiff and interveners to represent and seek injunctive relief for some 79 persons out of the 2300 renewal leaseholders under the 1947 Act, who have become assignees of renewal leases under approval of the Board, through payment to the State of one-half of the consideration paid to the renewal leaseholder, pursuant to the provisions of R.S.Supp.1949, § 72–234.02. But plaintiff and interveners cannot in a class action represent any rights of others which go beyond their own. They can only give to others through representation the benefit of such rights as they are able to establish in their own situation. If any contract rights from estoppel or otherwise can exist in favor of the 79 persons referred to, by virtue of R.S.Supp.1949, § 72–234.02, beyond the situation of plaintiff and interveners, which has been discussed above, they are not before us and we make no consideration of them.

On the basis of what has been said, plaintiff and interveners are not entitled to an injunction from a federal court as sought, and their action is dismissed, with allowance of costs against them.