IN RE APPLICATION OF CITY OF LINCOLN, NEBRASKA.
ROLLIE JOHNSON ET AL., APPELLEES, V. CITY OF LINCOLN,
NEBRASKA, APPELLANT.

120 N. W. 2d 297

Filed March 1, 1963.　No. 35219.

Ralph D. Nelson, Henry L. Holst, and Hal B. Hassel-balch, for appellant.

John McArthur, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The City of Lincoln, a municipal corporation, located in Lancaster County, brought a proceeding before the county judge of said county to acquire a temporary and permanent easement for sanitary sewer purposes. The petition of the City in the county court alleged that Rollie Johnson and Betty Johnson, his wife, purportedly had some interest in the property described in the petition, the true nature of which was unknown to the applicant. In the prayer of the petition the City prayed that all persons claiming any interest in or right to any of the premises described have notice of the proceeding, and that their right, title, and estate be bound and forever determined and concluded thereby. The appraisers appointed by the county judge awarded Rollie Johnson and Betty Johnson, his wife, no damages. Rollie Johnson and Betty Johnson, his wife, appealed to the district court.

For convenience we will refer to the City of Lincoln as the city, and to Rollie Johnson and Betty Johnson, his wife, as the plaintiffs, or when necessary by their right names.

The petition of the plaintiffs alleged that they were the defendants in the original proceeding and in possession of portions of Lots 17 and 24, Irregular Tracts in the southeast quarter of Section 7, Township 10 North, Range 7 East of the 6th P. M., in Lancaster County; that these plaintiffs had contracts and leases and a leasehold interest in and to a large portion of the land

over which the city sought to obtain a permanent and temporary easement; that the plaintiffs' leasehold interest and contract in a portion of the land considered covered an area which the plaintiffs had developed and completed as an addition to a trailer court located thereon except for the interference of the city; that in another portion of said land considered the plaintiffs had only partially completed the development and building of an addition to a trailer court therein; and that all of said land and the contracts and leases of the plaintiffs had been affected and would be affected by the easements which the city desired and which easements would damage the plaintiffs. The petition then set out the manner in which the plaintiffs would be damaged by the city by virtue of the obtaining of the easements heretofore mentioned. The prayer of the petition was for damages.

The city in its answer alleged that the city condemned the property described in the transcript filed with the petition. The city further alleged that the plaintiffs had no compensable interest in the property condemned, and the board of appraisers awarded the plaintiffs nothing for their alleged interest. The prayer of the answer was that the court dismiss the petition.

The case was tried to a jury resulting in a verdict in favor of the plaintiffs in the amount of $1,350. The city filed a motion for new trial which was overruled. The city perfected appeal to this court.

The city assigns as error that the trial court erred in not granting the city a directed verdict on grounds that the plaintiffs had not proved an interest in the land condemned and had not proved damages by competent and relevant evidence; that the trial court erred in allowing the plaintiffs to withdraw their rest and attempt to elicit additional evidence on issues which were the foundation of the city's motion for directed verdict; and that the verdict was not sustained by the evidence and was contrary to law.

The city moved for a directed verdict at the close of the plaintiffs' evidence, after the trial court had permitted the plaintiffs to withdraw their rest and introduce other evidence, and at the close of all of the evidence.

The city having attacked the sufficiency of the evidence, it is necessary to summarize the competent and material evidence.

The record discloses that Merril R. Reller is the owner of the real estate described in the pleadings known as Commercial Center; that this property is located just outside of the city limits of Lincoln, and consists of 120 acres with a frontage of approximately 2,700 feet; and that since his ownership of the property and prior thereto, it was used in part for mobile homes or house trailers.

Merril R. Reller testified that he and the plaintiffs determined to set up a more elaborate trailer court; that Rollie Johnson was an electrical engineer and knew about construction and building; that a contract was drawn up in which Rollie Johnson was to supervise the building of the trailer court and eventually it would be completed, then the Johnsons would manage the finished product; that the trailer court was first built in sections; that Rollie Johnson was in charge of the actual construction; and that prior to June 1960, about four sections had been built which would comprise about 160 or possibly 180 spaces. The Johnsons were in exclusive possession of this trailer court and had exclusive operation of it. As of June 1960, the next section of the trailer court was ready to be developed. The amount of land this section would cover was to be approximately 400 feet by 800 feet. It would accommodate 40 new trailer spaces, and have adequate parking and playground area. When this new development was in the making, Reller entered into a written contract with the plaintiffs, the plaintiffs were placed in possession of the land upon which the new section was to be built, and

operations were commenced. The land described in the contract is the same land that was actually crossed by the intercepter sewer built by the city. When the plaintiffs were put in possession of the land in June 1960, the plaintiffs built a well in the area to serve the trailers that were to be placed on this new section. They had grading done, the land was completely surveyed, piping and water was brought into the area, some ditching was done, and roads were built. This work was all done by the plaintiffs prior to the city showing any desire to obtain an easement or to cross the land with the intercepter sewer. The plaintiffs were in possession when the city commenced the condemnation proceedings, and were named as parties so their interests could be determined.

The contract between Merril R. Reller and the plaintiffs provided in part: "This agreement as to specifications and plans for an addition to the Center Trailer Court of a 40-trailer unit, said court being located at 4100 Cornhusker Highway, * * *.

"The size and location of the area will be 300 feet deep extending along the full north side of the present court. * * *

"Roadways to be of cement construction, * * *.

"Land area to be furnished by First Party (Reller) and money needed for construction to be furnished by * * * (Reller) as needed, not to exceed $40,000.00, that being the estimated cost of completing new area. Labor and management of construction to be furnished by Second Parties (Johnsons) and * * * (Johnsons) to keep adequate books of account * * *,

"Adequate insurance to be carried by * * * (Johnsons).

"Construction is to commence not later than August 15, 1960 and one-half of said lots are to be ready for occupancy by trailers by October 15, 1960 and the balance of said area to be finished by December 15, 1960."

The plaintiffs were to receive the full income from the new section of the trailer court for the period of 2 years

from and after completion of the new section. At the expiration of the 2 years the plaintiffs were to manage the court, keep the same in repair, keep all books of account, and to receive 50 percent of the proceeds for a period of 10 years. This agreement was signed and acknowledged by Reller and the plaintiffs on June 6, 1960.

The first notice Reller had that the city intended to cross the area where the Johnsons were to build the addition to the trailer court was in August or September 1960.

Merril R. Reller further testified that the going through with the intercepter sewer caused at least the trailer in one space to be moved off the lot because of the encroachment of the intercepter sewer easement, and this trailer space was rented; that for a period of 2 years the easement would be 100 feet wide and it was doubtful if that space could be restored; that the trailer spaces were filled at all times; and that the condemnation of the right-of-way by the city for the intercepter sewer, in the opinion of this witness, would make it impossible to use this area for the placing of the trailer court addition.

Certain exhibits were introduced in evidence showing the operation of the building of the intercepter sewer. There is also in evidence a blueprint or drawing of the Center Trailer Court showing the area referred to in the written agreement, an exhibit which shows the trailer court imposed upon a larger map of the Commercial Center and the adjacent area, and an aerial map of the Commercial Center showing the trailer court and the area referred to in the written agreement.

Merril R. Reller further testified that it would not be possible to build paved roads or any kind of permanent installations on this area where the city has the intercepter sewer easement for several years because the easement prohibits the building of any structures over it; that for a number of years there will be an instability

to this area that is some 50 feet wide that runs diagonally through this area causing settling; that the well that was on these premises must be a certain distance away from the sewer before it can be used; and that it would be hazardous to use the well in this vicinity for the use of human beings. Reller further testified that 'from his knowledge as owner of the Commercial Center, his interest as lessor of the trailer court, and as a person participating in the profits of it, the Johnsons' contract interest would create a loss to them in the amount of $12,000 to $16,000.

Merril R. Reller further testified on cross-examination that the Johnsons expended about $1,000 under the agreement, and were unable to complete any part of the trailer spaces due to the interference of the intercepter sewer line.

An expert witness who had appraised property for different concerns, both public and private, and who was the owner of a trailer court, testified that he operated a trailer park at 4020 North Forty-eighth Street, just north of the Cornhusker Highway, and about 7 blocks from the Center Trailer Court; that he had gone through the Center Trailer Court at different times and observed the various states of its construction; that from his knowledge of the way the intercepter sewer goes through this area it would not be feasible to develop the area north of the present Center Trailer Court; and that he was familiar with the agreement between Reller and the Johnsons, and based on the value of the Johnsons' interest under the contract and the value of such interest after the intercepter sewer goes through this area, Johnsons' interest would have been diminished by $15,000 conservatively. This witness then proceeded to demonstrate in what manner he arrived at the above figure, which need not be set forth herein.

Rollie Johnson testified that he lives at 4100 Cornhusker Highway and operates and maintains the Center Trailer Court; that he has been connected with the Com-

mercial Center premises, upon which this court is located, for a little over 12 years; and that he had 3 years of engineering in college and is an electrical engineer. This witness further testified that he and Reller planned the Center Trailer Court, he personally directed and employed the help, and applied his personal knowledge to the building of the trailer court; that it was built in sections; that the first step in building a section would be a survey of the elevation of the land to make sure that there would be proper drainage; that the next step would be the utilities, sewer, water, and electricity; and that when the city was digging the ditch for the purpose of placing the intercepter sewer, he had a man patrolling and watching it, and he himself watched it as part of his duties to police the place to make sure nothing happened. This witness further testified that following the execution of the agreement, heretofore set forth in part, survey work was done, elevations were determined, a road was built, culverts were put in, and a well was drilled; that hired help was necessary to have in order to haul dirt, level the premises, and make the grade right; and that he expended $1,000, outside of his personal services, in carrying out the agreement. The items comprising the expenditure of $1,000 consisted of $500 for surveying to get the land laid out for trailer spaces, and $500 for building a road and putting in culverts. He further testified that since the city was going to put in an intercepter sewer there was no way that he could proceed further with the project; and that a well could not be built in close proximity to the city sewer because the water would not be fit for human use, and concrete roads could not be built over the easement. This witness further testified that the preparatory work and construction of the intercepter sewer has affected the operation of the completed and existing trailer court because the city flooded that area on a couple of occasions by blocking off the drainage ditch immediately north of the existing court; that prior to the construction

of the sewer there was no flooding or drainage problem at the trailer court; and that this flooding caused extra work and extra expense to this witness. This witness further testified that he determined his rights under the agreement; that the difference in the value of his rights before and after the construction of the intercepter sewer was $14,000 or $15,000; and that his agreement with Reller had no value subsequent to the building of the sewer, and no use can be made of the land affected by the sewer.

The plaintiffs asked leave to withdraw their rest, for the purpose of putting in further evidence in reference to the damages and measure of damages, and leave was granted by the trial court. Reller was recalled and testified that he knew the value, under the agreement, of the plaintiffs' interest in the property referred to in the agreement prior to the condemnation; that their value was $14,000; and that the value subsequent to the condemnation would not exceed $500.

Rollie Johnson testified that he knew the value of the interest that he and his wife had under the terms of the agreement with Reller prior to the condemnation which was $14,000; and that the value subsequent to the condemnation of the interest of him and his wife would be nothing.

A duly qualified appraiser testified in behalf of the city. The effect of his testimony was that he was sent to the premises to negotiate a settlement with the plaintiffs but due to many difficulties he was unable to do so and unable to determine what value, if any, Johnsons had that was subject to damages as a result of the condemnation proceeding.

It also appears from the evidence that an annual permit was issued by the County of Lancaster to Rollie Johnson for the Center Trailer Court at 4100 Cornhusker Highway, signed by the chairman of the board of county commissioners and the county clerk, dated July 1959. Another permit of the same character was issued

to Rollie Johnson and dated July 1, 1961.

The city contends that the plaintiffs do not have an actual estate or interest in the soil, and that a mere contractual relation not creating an interest is not sufficient to permit recovery of damages by the plaintiffs in this condemnation proceeding.

We deem the following to be applicable to the instant case.

"A lease is a species of contract for the possession and profits of land and tenements, either for life, or for a certain period of time, or during the pleasure of the parties; and the essential elements of a contract must be present." 51 C. J. S., Landlord and Tenant, § 202 (b), p. 803.

"Whether an instrument is a lease or creates a relation other than that of lessor and lessee depends on the intention of the parties. The instrument is to be reasonably construed, and the practical construction given it by the parties thereto considered." 51 C. J. S., Landlord and Tenant, § 202 (e), p. 805.

An instrument may be given effect as a lease although the word "lease" is not used. See Moore v. Miller, 8 Pa. St. 272. See, also, Ault Woodenware Co. v. Baker, 26 Ind. App. 374, 58 N. E. 265; 51 C. J. S., Landlord and Tenant, § 202, p. 806.

In Van Avery v. Platte Valley Land & Investment Co., 133 Neb. 314, 275 N. W. 288, this court said: "Preliminary to the consideration of the determinative issues presented in the record before us, it may be noted that the validity of the lease of real estate here involved, and the bona fides of the relation of landlord and tenant created thereby, are in no manner affected by the provisions thereof determining that the amount of the rental shall be fixed at a definite percentage of the amount of income received by the tenant * * *." Cases are cited.

We conclude, from a review of the authorities heretofore cited, that the contract, in part previously set forth,

constitutes a lease between Reller and the plaintiffs.

The city next contends that the contract heretofore in part set forth does not contain an adequate description of the property contemplated in the lease. On this point the following are applicable.

"The instrument usually contains a description of the demised premises, and it has been held that the lease should contain a sufficiently accurate description of the property demised as clearly to indicate just what property is intended to be covered by the lease, as the want of such description may render the lease inoperative. However, no particular form of description is necessary; any description by which the identity of the leased property may be established is sufficient. * * * Where the parties have by their conduct located the property, it has been held that it is no objection that it was not described in the lease." 51 C. J. S., Landlord and Tenant, § 214, p. 818.

In Boyd v. McElroy, 105 Colo. 527, 100 P. 2d 624, the court said: "In litigation over a lease * * *, the parties concerned being fully acquainted with the premises, any uncertainty in description was cured by the introduction of record evidence accurately describing the land."

In the instant case, as heretofore mentioned, certain exhibits were received in evidence by which the land here involved was sufficiently and adequately described.

In view of the authorities cited and the exhibits, we conclude that the contention of the city is without merit.

Other cases pertinent to a determination of this appeal are as follows.

In Gledhill v. State, 123 Neb. 726, 243 N. W. 909, this court held: "A tenant for a term has a property right in land, which is protected by section 21, art. I of the Constitution." See, also, Fair-Way Oil Co. v. State, 132 Neb. 707, 272 N. W. 917; State v. Platte Valley Public Power & Irr. Dist., 147 Neb. 289, 23 N. W. 2d 300, 166 A. L. R. 1196; Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200; Brooklyn

Eastern Dist. Terminal v. City of New York, 139 F. 2d 1007, 152 A. L. R. 296.

In the light of the evidence and the foregoing authorities, the plaintiffs have an estate and interest in the land described in the plaintiffs' petition, which required the city to compensate the plaintiffs in damages for the taking of a part thereof and damaging plaintiffs' property.

With reference to the city's assignment of error that the trial court abused its discretion in allowing the plaintiffs to withdraw their rest and put on evidence as to the value of the leasehold, we will not repeat the evidence with reference to this matter. The city does lay great stress on this evidence because the witnesses did not use the words "market value."

It cannot be questioned that the owner of the real estate which is taken in a condemnation proceeding, or the lessee thereof, who is familiar with its value, and the owner of personal property can testify as to its value. See Chicago, R. I. & P. Ry. Co. v. Buel, 56 Neb. 205, 76 N. W. 571.

In Wahlgren v. Loup River Public Power Dist., 139 Neb. 489, 297 N. W. 833, this court said: "* * * where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation." See, also, Republican V. R. R. Co. v. Arnold, 13 Neb. 485, 14 N. W. 478; Blakeley v. Chicago, K. & N. Ry., 25 Neb. 207, 40 N. W. 956; Burlington & M. R. Co. v. White, 28 Neb. 166, 44 N. W. 95; Chicago, R. I. & P. Ry. Co. v. Buel, *supra;* Langdon v. Loup River Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168.

As stated in 20 Am. Jur., Evidence, § 897, p. 755: "Ordinarily, property owners who have lived for some time in the vicinity and know the property are qualified to testify to its value."

As stated in Miller v. Drainage Dist., 112 Neb. 206, 199 N. W. 28: "The owner of personal property is quali-

fied by reason of the ownership relation to give his estimate of the value of such property." See, also, McGuire v. Thompson, 152 Neb. 28, 40 N. W. 2d 237; Borden v. General Insurance Co., 157 Neb. 98, 59 N. W. 2d 141.

The evidence adduced in the instant case was sufficient to present to the jury the evidence of the plaintiffs' witnesses as to value of the property taken from the plaintiffs in the condemnation proceeding. The city made no objection to any of the trial court's instructions which properly presented the measure of damages as applied to the facts in the instant case. While the city lays great stress upon the words "market value," we conclude, in the light of the record, no prejudicial error resulted from the failure to use the words "market value."

This court held in Luikart v. Continental Nat. Bank, 126 Neb. 598, 253 N. W. 905: "Whether party may withdraw his rest and introduce further testimony rests within sound discretion of trial court." See, also, Hall v. Vakiner, 124 Neb. 741, 248 N. W. 70; 88 C. J. S., Trial, § 105, p. 220.

There is no indication in the record that the trial court abused its sound legal discretion.

Other matters raised by the city need not be determined in the light of the evidence and the authorities heretofore set forth.

For the reasons given in this opinion, the judgment of the trial court is affirmed.

AFFIRMED.